793 So.2d 302 (2001)
STATE of Louisiana, Appellee,
v.
Scott Bernard LEWIS, Appellant.
No. 34805-KA.
Court of Appeal of Louisiana, Second Circuit.
June 22, 2001.
*303 Louisiana Appellate Project by Peggy J. Sullivan, Counsel for Appellant.
Richard Ieyoub, Attorney General, Counsel for Appellee.
Paul J. Carmouche, District Attorney, J. Thomas Butler, Assistant District Attorney, Appellate Counsel.
Brian King, Assistant District Attorney, Trial Counsel.
Before PEATROSS, KOSTELKA and DREW, JJ.
DREW, J.
Defendant Scott Lewis was tried by a judge and convicted of attempted second degree murder of Johnny Brand. Defendant was sentenced to serve 15 years at hard labor without benefit of probation, parole or suspension of sentence. He now appeals. We affirm the conviction and sentence.

FACTS
In October 1999, Angela Lewis was married to the defendant. Angela, who was in the Air Force, had engaged in an affair with Brand, who was also in the Air Force. Angela invited the defendant to meet some of her friends from the Air Force and later to attend a fair with them. After work on October 29, 1999, Angela drove the defendant to the gathering in her car, a black Dodge Shadow with Florida tags. En route, the defendant insisted that Angela drive him to Barksdale Air Force Base to *304 show him where Brand lived. In the car, Angela saw that the defendant had a gun with him. After going to the base, Angela and the defendant then traveled to a second-floor apartment at The Pier Apartments in Shreveport, where they visited Angela's friends and had a couple of beers. After Angela and the defendant had been at the apartment for about 45 minutes, Brand and his guest, Kara Jackson, arrived.
Within minutes of being introduced to Brand, the defendant asked him to step outside to talk. Angela became concerned that something might happen, so she and two friends looked out the door to check on the defendant and Brand. The two men were alone, and everything appeared to be fine, so the door was closed. However, Angela immediately informed another friend, Darrell Brooks, that the defendant had a gun and asked him to go outside and make sure nothing happened.
Within seconds of Angela and Brooks' conversation, and before they could walk to the door, a gunshot rang out. The majority of the people inside the apartment immediately ran outside to find the victim on the grass near the parking lot, bleeding from his face. Some saw the defendant driving away in Angela's car. The injured victim was located about four or five parking spaces away from where Angela's car had been parked.
A neighbor, James Van Horn, who was unacquainted with any of the other witnesses, was standing nearby in the parking lot with some family members when he heard the gunshot. Horn armed himself with a pistol and waited in a dark area. He looked in the direction of the gunshot sound and saw the defendant calmly walk from the alcove from where the sound originated. The defendant got into a black Dodge Shadow and left. Van Horn memorized the car's license plate number as the defendant left the scene.
Later that night, Linda and John Meservy were in their vehicle in the drive-through lane of a Burger King restaurant located near the Pier Apartments. They saw a black male quickly drive his car into the parking lot of the restaurant, and park the car next to them. The driver then exited the vehicle and ran across Shreveport-Barksdale Highway toward a Mc-Donald's Restaurant, in the opposite direction of the Pier Apartments. The car, a black Dodge Shadow with Florida tags, matched the description of the car in which the defendant fled from the apartments. It was seized by the police. About five hours after the shooting, police found the defendant walking westbound on Stoner Avenue near the Coca-Cola building, which is about five miles from the crime scene. His clothes were dirty, and he appeared to have recently emerged from a wooded area. The .40 caliber handgun was never found.
Police officers responded to the 911 call of the shooting at approximately 7:10 p.m. A .40 caliber shell casing was found on the sidewalk very near the spot where Brand fell, as shown in photographs introduced into evidence. Brand's treating physician estimated that he was shot from a distance of three to four feet away. The gunshot wound was located between his cheek and jaw on the left side of his face. One of the victim's arteries was destroyed and fragments entered his spine. The occlusion of the artery presented the risk of a stroke, which would have normally been lessened by administering blood-thinning medicines to Brand. However, the doctors were unable to do this in Brand's case due to the bleeding associated with his wound. Brand subsequently suffered a stroke as a result of the gunshot wound, causing him to experience partial paralysis and extreme *305 communication difficulties. He could only say a few words at the time of the trial, and he used a keyboard link device to communicate during his trial testimony. The victim remembered the events leading up to the crime, but could not remember anything about the shooting, or whether the defendant had a gun.
A search of the defendant's apartment revealed an ammo box for a Smith & Wesson.40 caliber handgun. Records from the Federal Bureau of Alcohol, Tobacco and Firearms indicated that the defendant purchased a Smith & Wesson .40 caliber handgun with the same serial number as was shown on the box found in the defendant's apartment.
The defendant was charged by bill of information with attempted second degree murder. Subsequent to a bench trial, the defendant was found guilty as charged. The defendant filed a motion for new trial and a motion for a post-verdict judgment of acquittal, which were both denied by the trial court. He was sentenced to serve 15 years at hard labor without benefit of parole, probation or suspension of sentence.

DISCUSSION

Sufficiency of Evidence
The defendant argues in his first assignment of error that there was insufficient evidence at trial to support the verdict of attempted second degree murder. Subsequent to his conviction, the defendant filed a motion for post-verdict judgment of acquittal, which was denied. The question of sufficiency of evidence is properly raised by a motion for post-verdict judgment of acquittal.[1]State v. Howard, *306 31,807 (La.App.2d Cir.8/18/99), 746 So.2d 49, writ denied, 1999-2960 (La.5/5/00), 760 So.2d 1190.
Second degree murder occurs when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. The gravamen of the crime of attempted murder, whether first or second degree, is the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Huizar, supra; State v. Butler, supra. Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); State v. Arnold, 30,282 (La. App.2d Cir.1/21/98), 706 So.2d 578. Many cases which have found evidence sufficient to support the inference of specific intent to kill have relied on the proximity of the gunman to the victim: close-range or point-blank. See State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. Maxey, 527 So.2d 551 (La. App. 3rd Cir.1988), writ denied, 541 So.2d 868 (La.1989); State v. Latchie, 535 So.2d 541 (La.App. 3d Cir.1988).
A review of this record reveals that the evidence was sufficient to support the defendant's conviction of attempted second degree murder. That is, the facts established by the direct evidence and inferred from the circumstances established by that evidence, viewed in the light most favorable to the prosecution, were sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. The record supports the reasonable conclusion that the defendant shot the victim with a gun in the face at close range. These facts illustrate the defendant's specific intent to kill, and the commission of an overt act tending toward the accomplishment of that goal. The record is replete with evidence of the defendant's flight, concealment, and attempt to avoid apprehension, indicating his consciousness of guilt. When viewing the evidence in the light most favorable to the prosecution, the defendant's possible alternative hypothesis, that another person shot the victim, is not sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. Indeed, the record clearly supports the trial court's factual finding that the defendant was the perpetrator. Thus, the evidence is sufficient to support the defendant's conviction of attempted second degree murder.

Specific Intent to Kill
The defendant argues in his next assignment of error that the trial court did not apply the law correctly by finding that Scott Lewis had the intent to kill or inflict great bodily harm and using that as a basis for a conviction of attempted second degree murder.
After the presentation of the evidence, the defense repeatedly argued that the state failed to prove the defendant's specific intent to kill the victim. In its closing argument, the state strongly urged the trial court to find that it had proved the defendant's specific intent to kill the victim.
*307 The state requested that the trial court be charged with the law regarding the requirement that the state must prove that the defendant had the specific intent to kill the victim. Additionally, the state requested the standard charge regarding flight as evidence of guilt. The state noted the occasional confusion among lawyers regarding the specific intent to kill requirement for proof of attempted second degree murder, and its desire to clarify the issue for the record. The defense responded that it had no objection to the charges. The trial court then stated, "All right. It will be admitted. Court will read them, consider the special charges." In announcing his finding of guilt, the trial judge stated that the victim was shot in the face and/or head, which would indicate that the person who shot him "had the specific intent to kill him or inflict great bodily harm[.]"
The defendant argues that the law clearly requires a finding of the specific intent to kill for a conviction of attempted second degree murder, and that the trial court's reasons indicate that the wrong law was applied. He contends that this error requires reversal of the conviction and a remand for a new trial.
The state admits that the court used the phrase "or inflict great bodily harm" in its reasons for judgment, but contends that the proper element of specific intent to kill was included in the charges to the trial court and strongly argued by both parties. The state asserts the trial court's finding of the defendant's specific intent to kill is shown by a review of the entire record. In particular, the state notes that the trial court found that the defendant pointed the gun directly at the head of the victim and shot him in the face.
In State v. Armant, 97-1256 (La.App. 5th Cir.5/27/98), 719 So.2d 510, writs denied, 98-1884 (La.11/20/98), 729 So.2d 3 and 98-1909 (La.11/20/98), 729 So.2d 4, the court dealt with a similar issue. The defendant was found guilty of attempted second degree murder in a bench trial. However, the trial court in Armant, in its oral reasons for judgment, referred to the threat of great bodily harm. After a lengthy discussion of the applicable law, the court found that the state presented sufficient evidence that the defendant had the specific intent to kill the victim to support his conviction of attempted second degree murder, even though the trial court made references to bodily injury. In so holding, the court noted that the trial judge in a bench trial is not required to give reasons in support of his verdict, nor is he required to charge himself on applicable law, since he is presumed to know it, citing State v. Pizzalato, 93-1415 (La.App. 1st Cir.10/7/94), 644 So.2d 712, writ denied, 94-2755 (La.3/10/95), 650 So.2d 1174.
With due process considerations in mind, the appellate court in Armant nevertheless found that the test to be applied depends upon the facts of the particular case. Under the particular facts in that case, the court agreed with the harmless error analysis and conclusion in State v. S.P., 608 So.2d 232 (La.App. 5th Cir.1992), and the decisions in State v. Brunet, 95-0340 (La.App. 1st Cir.4/30/96), 674 So.2d 344, writ denied, 96-1406 (La.11/1/96), 681 So.2d 1258 and State v. Chisolm, 95-2028 (La.App. 4th Cir.3/12/97), 691 So.2d 251, writ denied, 97-0938 (La.10/3/97), 701 So.2d 195. The court noted that its case involved a judge, not a jury, trial. Further, the court found the facts were distinguishable from cases in which harmless error was not found, citing State v. Williamson, 389 So.2d 1328 (La.1980); State v. Pyke, 93-1506 (La.App. 3d Cir.5/4/94), 640 So.2d 460; and State v. Holmes, 620 So.2d 436 (La.App. 3d Cir.1993), writ denied, 626 So.2d 1166 (La.1993).
*308 In State v. Harris, 26,269 (La.App.2d Cir.9/21/94), 643 So.2d 779, writ denied, 94-2607 (La.2/17/95), 650 So.2d 251, this court noted that the jury instructions on the elements of attempted first and second-degree murder were misleading. The jury was instructed that the specific intent requirement for first and second-degree murder could be satisfied by a showing of the intent to inflict great bodily harm, but it was never expressly informed that specific intent to inflict great bodily harm would not satisfy the intent element of the crime of attempted murder. However, the error was found to be harmless in light of the overwhelming evidence that the defendant intended to kill the victim.
In State v. Hongo, 706 So.2d 419 (La. 1997), the supreme court found that the trial court's error in issuing jury instructions that improperly included the intent to inflict great bodily harm as an element of attempted second-degree murder was not a structural error but, rather, was a trial error which may or may not have prejudiced the defendant and, thus, was subject to harmless error analysis. It held that an invalid instruction on the elements of an offense is harmless if the evidence is otherwise sufficient to support the jury's verdict and the jury would have reached the same result if it had never heard the erroneous instruction.
As noted by the state, the proper law regarding specific intent was stringently argued by both sides before the trial court rendered its judgment. Although not required, the trial court was charged with the proper law regarding the necessary specific intent to kill to convict of attempted second degree murder. This case was not tried by a jury, but by a judge who is presumed to know the law. Also, the trial court was not required to give reasons for judgment. Thus, even though the trial court made an incorrect utterance regarding specific intent, its factual finding that the defendant shot the victim in the face or head was sufficient to infer the defendant's specific intent to kill the victim. The record is filled with evidence of the close proximity of the gunman to the victim, the nature and gravity of the victim's injury, and the victim's resultant severe disabilities. Any error in the trial court's utterance of the incorrect phrase, "or inflict great bodily harm," was harmless under the particular facts of this case. This assignment of error is therefore without merit.

DECREE
Defendant's conviction and sentence are AFFIRMED.
NOTES
[1] The proper standard of appellate review for a sufficiency of evidence claim under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992). The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.

When circumstantial evidence forms the basis for conviction, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when viewing the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia. This is not a separate test from Jackson v. Virginia. State v. Owens, supra; State v. Durham, 32-154 (La.App.2d Cir.8/20/99), 748 So.2d 1, writ denied, 1999-2959 (La.4/7/00), 759 So.2d 91.
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Butler, 322 So.2d 189 (La. 1975); State v. Maxie, 30,877 (La.App.2d Cir.8/19/98), 719 So.2d 104; State v. Dean, 528 So.2d 679 (La.App. 2d Cir.1988) Evidence of flight, concealment, and attempt to avoid apprehension indicate consciousness of guilt. State v. Davies, 350 So.2d 586 (La. 1977); State v. Thompson, 33,204 (La.App.2d Cir.3/1/00), 754 So.2d 412; State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.1993), writ denied, 619 So.2d 573 (La.1993).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to the trier of fact's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (1987).