It CARAWAY, J.
This sixteen year old, EDC, was adjudicated delinquent for the crimes of unauthorized entry of a business, entry on or remaining in places after being forbidden and theft. The trial judge committed EDC to the Department of Public Safety and Corrections, Office of Youth Services (“OYS”) until not later than his eighteenth birthday for the unauthorized entry. His disposition was to be served concurrently with sentences of six months on the theft and the charge of remaining after forbidden. EDC appeals both the adjudication and disposition. We affirm the adjudications, but vacate the dispositions and remand for a disposition hearing.

Facts

During a four-month period in late 2004, EDC engaged in a series of alleged delinquent acts which included his theft of clothing from a general store on August 30, 2004, and the unauthorized entry of Creative Crafts on October 30, 2004. EDC was also alleged to have cursed loudly and caused a disturbance during school hours at Davidson High School on October 12, 2004, and to have been on the main campus of Davidson High School after being forbidden from doing so on November 1, 2004.
As the result of these acts, the state charged EDC with middle grade theft of a general store in violation of La. R.S. 14:67.10, disturbing the peace at Davidson High School in violation of La. R.S. 14:103, the unauthorized entry of a place of business in violation of La. R.S. 14:62.4 and remaining after being forbidden at Davidson High School in violation |gof La. R.S. 14:63.3. The state permitted severance of the charges which were heard back to back for trial on December 14,2004.
After hearing evidence relating to the four offenses, the juvenile court adjudged EDC delinquent on the theft, unauthorized entry and remaining after forbidden charges and sentenced him to the custody of the Department of Corrections rather than probation. EDC appeals two of the delinquency adjudications and the disposition of custody imposed by the juvenile court. EDC argues that the evidence was insufficient for the adjudication of both the unauthorized entry of a place of business and the charge of remaining after being forbidden. He further argues that the unauthorized entry of a place of business adjudication should be reversed due to the *574 juvenile court’s inappropriate reference to his silence. EDC also complains that the juvenile court abused its discretion in failing to afford him an opportunity to perform on probation and in conducting a statutorily deficient disposition hearing.

Discussion

The unique nature of the juvenile system is manifested in its noncriminal, or ‘civil’ nature, its focus on rehabilitation and individual treatment rather than retribution, and the state’s role as parens patriae in managing the welfare of the juvenile in state custody. State ex rel. D.J., 01-2149 (La.5/14/02), 817 So.2d 26. The purpose of the Louisiana delinquency proceedings is to accord due process to each child who is accused of having committed a delinquent act and, except as provided for in La. Ch. C. art. 897.1, to insure that he shall receive, preferably in his own home, the care, guidance, and control that will be conducive to his welfare Land the best interests of the state and that in those instances when he is removed from the control of his parents, the court shall secure for him care as nearly as possible equivalent to that which the parents should have given him. La. Ch. C. art. 801. The provisions of the Louisiana Children’s Code govern and regulate delinquency proceedings, but where procedures are not provided, the court shall proceed in accordance with the Louisiana Code of Criminal Procedure. La. Ch. C. art. 803. All rights guaranteed to criminal defendants by the Constitution of the United States or the Constitution of Louisiana, except the right to jury trial, shall be applicable in juvenile court delinquency proceedings. La. Ch. C. art. 808.
In order for the court to adjudicate a child delinquent, the state must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. La. Ch. C. art. 883. In a juvenile case, the reviewing court is constitutionally compelled to review both facts and law. La. Const, art. 5, § 10(A) and (B). However, the reviewing court must recognize that the juvenile judge observed the conduct and demeanor of the witnesses and was in the best position to determine credibility and weigh the evidence. Therefore, this court grants great deference to the juvenile court’s factual findings and credibility determinations and assessment of the weight of particular testimony. State v. S.B., 31,264 (La-App. 2d Cir.9/25/98), 719 So.2d 1121. Not only does the standard of review in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) apply to juvenile delinquency adjudicatory hearings, but our state constitution mandates that we determine, after reviewing the record evidence, whether the juvenile |4court was clearly wrong in its fact-findings. State ex rel. K.G., 34,535 (La.App. 2d Cir.1/24/01), 778 So.2d 716; State v. Redd, 445 So.2d 126 (La.App. 2d Cir.1984). See discussion, State in Interest of Cason, 438 So.2d 1130 (La.App. 2d Cir.1983).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747. In the absence of internal contradiction or *575 irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Fuller, 32,734 (La.App. 2d Cir.12/17/99), 759 So.2d 104, writ denied, 00-0159 (La.8/31/00), 766 So.2d 1273; State v. Gradick, 29,231 (La.App. 2d Cir.1/22/97), 687 So.2d 1071.
Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Lilly, 468 So.2d 1154 (La.1985); State v. Turner, 591 So.2d 391 (La.App. 2d Cir.1991), ñwrit denied, 597 So.2d 1027 (La.1992). For circumstantial evidence to convict, it must exclude every reasonable hypothesis of innocence. La. R.S. 15:438.
Evidence of flight, concealment, and attempt to avoid apprehension indicate consciousness of guilt. State v. Davies, 350 So.2d 586 (La.1977); State v. Lewis, 34,805 (La.App. 2d Cir.6/22/01), 793 So.2d 302.
When a defendant challenges both the sufficiency of evidence and one or more other trial errors, the appellate court should first resolve the sufficiency challenge. State v. Hearold, 603 So.2d 731 (La.1992); State v. Mickens, 31,737 (La.App. 2d Cir.3/31/99), 731 So.2d 463, writ denied, 99-1078 (La.9/24/99), 747 So.2d 1118. The same rule should apply to juvenile adjudications. See, State in Interest of K.W., 93-716 (La.App. 5th Cir.2/9/94), 632 So.2d 5.
Sufficiency of Evidence — Unauthorized Entry of Business
Unauthorized entry of a business is the intentional entry by a person without authority into any structure or onto any premises belonging to another that is completely enclosed by any type of physical barrier that is at least six feet in height and used in whole or in part as a place of business. La. R.S. 14:62.4. In the absence of a qualifying statutory provision, the terms “intent” and “intentional” in criminal statutes have reference to general criminal intent. State v. Godeaux, 378 So.2d 941 (La.1980). General intent exists when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his |fiacts or failure to act. La. R.S. 14:10. In a general criminal intent crime, criminal intent which is necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal. State v. Holmes, 388 So.2d 722 (La.1980).
On appeal EDC argues that the evidence presented by the state failed to exclude the reasonable hypotheses that he had permission to be on the business premises or that the second individual found inside of the building, who did not name EDC as an accomplice, was the sole perpetrator. Further EDC contends that the record lacks proof of “a physical barrier that is at lease six feet in height.”
The only evidence presented by the state in proof of the unauthorized entry of a place of business charge was the testimony of Willie Percy, a St. Joseph police officer. Percy testified he nightly patrols the town of St. Joseph to check the businesses after hours. At approximately 12:30 a.m. on October 30, 2004, as he patrolled, Percy noticed an open door which appeared to have been kicked in at a store known as Creative Crafts, a/k/a Harrison Craft. The business sold furniture and food. When Percy could obtain no confirmation from his office that anyone was supposed to be in the building at that hour, he gained entry through the open door and *576 began searching the dark building with a flashlight. During his search, Percy recognized EDC who was hiding in a cabinet. The officer knew the juvenile. Percy requested that EDC get up three times before he did so. When Percy asked him what he was doing in the store, EDC responded that he was “just messing around.”
DPercy testified he knew the operator of the business but admitted that he had no knowledge whether the business owner had given EDC permission to be there. After Percy talked with EDC for a while, he told him to go outside and wait as Percy continued to search the building. Percy did not complete his search at that time, however, because other police officers arrived. Although Percy did not give EDC permission to leave, EDC left the scene on his bike. While the other officers completed the search of the building, Percy retrieved EDC from his home and brought him to the police station where he read him his rights. : Percy also brought EDC’s mother to the police station.
Percy returned to the crime scene to secure the building. As he opened the door of the store, a second gentleman exited the building and told Percy he was waiting for him to come back so he could turn himself in. The other officers who searched had not found this man. The man did not tell Percy why he was in the store but said that he was “messing around.” A gym bag was found inside of the building containing candy and cigarettes although the owner of the bag was not identified. Percy testified that the store was not a hangout for teenagers and that in his previous patrols of the area, he had never noticed the door open at night.
In summary, this evidence shows that EDC was found in the early morning hours, long after the store had- closed, hiding in a cabinet in a dark business where the door had been kicked in. Instead of waiting for Percy, EDC fled the scene on his bike. A second individual, present inside of the building with EDC, gave indications of his own guilt but offered nothing |sregarding EDC’s participation in the events. We find this evidence sufficient to prove that EDC committed the crime of unauthorized entry of a business beyond a reasonable doubt to the exclusion of every reasonable hypothesis of innocence.
Contrary to EDC’s argument, while the second person found in the business may have inferentially given expressions of his guilt in the trespass, a conclusion of that person’s guilt does not imply EDC’s innocence. If EDC did not act in concert with the other person- whom he now asserts as guilty, he still entered a darkened business in the early morning hours without authorization and hid from an officer.
Further, while the state presented no direct evidence showing EDC’s lack of permission to be in the building, such a conclusion is clearly inferred from the late hour, the lack of lighting, the open door and EDC’s attempt to hide from Percy. Evidence of EDC’s flight from the scene is also indicative of his guilt as is the presence of a bag in the business containing the type of items sold in the store.
Finally, the evidence showing that a building housed the business and included at least one secured door, adequately proves that the store was contained in an enclosed space within walls obviously acting as a barrier to human entrance. This satisfies the physical barrier element of the offense.
Accordingly, when viewed in the light most favorable to the state, we find that the direct and circumstantial evidence presented by the state makes EDC’s hypothesis of innocence an unlikely possibility. *577 Thus, we find the | (¡evidence sufficient beyond a reasonable doubt to prove the crime of unauthorized entry of a place of business.
Sufficiency of Evidence — Remaining after being Forbidden
In pertinent part, the crime of remaining in places after being forbidden is the offense of going into or upon or remaining in or upon, without authority, any structure, watercraft, or any other movable or immovable property which belongs to another, including public buildings and structures, after having been forbidden to do so, either orally or in writing, by any owner, lessee or custodian of the property or by any authorized person. La. R.S. 14:63.3.
At the time of this offense, EDC was assigned to the alternative school having been removed from Davidson High School because of his conduct. On appeal, EDC argues that the state failed to prove the element of notice by an authorized person not to enter the high school grounds.
The evidence presented in proof of this offense included the testimony of John Turner, acting principal of Davidson High School. Turner testified that on a day in question, he received information from the school secretary that EDC was on campus although he had not completed his time in the alternative school which was located adjacent to the high school. Turner located EDC in a classroom. EDC was reluctant to come out and continued making verbal comments. Turner took him to a room near the school office in order for EDC to calm down. Thereafter, EDC left that room and went to the junior high wing of the school. Turner retrieved him from that location and EDC verbally protested and became disruptive. | in When EDC would not leave the campus, Turner summoned the chief of police. Turner testified that EDC was assigned to the alternative school which was located in two portable buildings in the back of the Davidson High School campus behind a fence.
Caldwell Flood of the Tensas Parish School Board also testified regarding this offense. Flood recalled being at Davidson High School on November I, 2004, when he heard a commotion outside of the school office. When he first saw EDC, he was pacing and proclaiming that Flood and Turner were not real principals. Flood confirmed that EDC had been removed from Davidson High School and placed in the alternative school environment. Flood testified that when a student is placed in the alternative school, he or she is supposed to stay away from Davidson High School unless the student is escorted by someone in authority from the alternative site. The alternative school students utilize the same restrooms and cafeteria but are required to be escorted to the main campus. Flood and Turner contacted Chief Spillman because EDC was out of control.
Ernest Spillman, Chief of Police of the St. Joseph Police department, also testified. Chief Spillman was informed that school authorities wanted EDC removed from the campus on November 1, 2004, because he was supposed to be in the alternative program and had come to the main campus unescorted. Chief Spillman testified that he had been to the campus on October 12, 2004, regarding a disturbance by EDC and had then informed the juvenile that if he returned to the campus, he would be arrested for 11Tremaining after being forbidden. On October 12, 2004, EDC was also in the alternative program.
We find this evidence sufficient for conviction. Two school officials testified that EDC had been in the alternative program before and was familiar with the rules regarding the means and times when en *578 trance to the main campus of Davidson High School was allowed by an alternative student. On the date in question, two school officials requested that EDC leave the campus and he refused. Chief Spill-man also testified that EDC had been warned on an earlier date that if he was found on the campus without an escort, he would be arrested for the crime of remaining after forbidden. Viewed in the light most favorable to the state, we find this evidence sufficient to show that EDC intentionally remained on the campus of Davidson High School after being forbidden from doing so.

EDC’s Silence

EDC further argues that his adjudication as delinquent on the unauthorized entry of a place of business charge should be reversed because the juvenile court erroneously allowed the state to elicit testimony regarding EDC’s silence and drew negative inferences from EDC’s silence in adjudicating him delinquent in violation of federal and state constitutional rights to due process and fundamental fairness.
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to the failure of the defendant to testify in his own | ^behalf. La. C. Cr. P. art. 770(3). The failure to object to such a comment waives the claim. State v. Higgins, 03-1980 (La.4/1/05), 898 So.2d 1219.
EDC cites two instances in direct examination of Officer Percy that the state improperly referred to his failure to testify at trial. However, the record reveals that during the specified colloquy the defense offered no objection to the testimony. Therefore, this claim is waived.
EDC also argues that the juvenile court erroneously considered EDC’s silence in adjudicating him delinquent when it stated:
You would’ve thought they’d had some reasonable explanation. You would’ve thought they would’ve stayed around when the officer found him in the building, to explain what was going on rather than leaving the area.
Likewise, defense counsel offered no objection to the juvenile court’s statements. Thus, they are waived. Moreover, the statements made by the juvenile court indicate that the court was looking at EDC’s silence when he was at the scene of the crime prior to his arrest, not EDC’s election not to testify at trial. Therefore, this assignment of error has raised no reversible error.

Disposition

Finally, EDC argues that at his disposition hearing the juvenile court relied upon unsupported conclusions in deciding EDC’s placement, should have conducted a “real disposition” hearing to assess EDC’s individual strengths and deficits, and erroneously failed to afford EDC the opportunity to perform on probation.
Regarding the disposition hearing, La. Ch. C. art. 893 provides, in pertinent part:
1 is A. At the disposition hearing, unless the child waives the presentation, the court shall hear evidence as to whether the child is in need of treatment or rehabilitation and shall make and file its findings.
B. All evidence helpful in determining the proper disposition, including oral and written reports, the report of the predisposition investigation, any reports of mental evaluation, and all other evidence offered by the child or the state shall be received by the court and may be relied upon to the extent of its proba *579 tive value even though not admissible at the adjudication hearing. Upon motion of the district attorney or the child, the court may hear testimony from the victim of the offense.
C. Counsel for the state and for the child shall be afforded an opportunity to present evidence and to examine and controvert written reports so received and to cross-examine individuals preparing the reports or other witnesses who give testimony at the hearing. Sources of confidential information need not be disclosed.
The purpose of a disposition hearing is to allow the court to hear evidence which will aid it in determining whether the juvenile is in need of treatment or rehabilitation. State ex rel. K.H., 98-632 (La.App. 5th Cir.12/16/98), 725 So.2d 583. Absent a waiver by the juvenile, the trial court must conduct a hearing prior to entering a judgment of disposition. State ex reí. K.G., supra; State in Interest of O.R., 96-890 (La.App. 5th Cir.2/25/97), 690 So.2d 200. The jurisprudence disallows a summary disposition without a hearing and requires some evidence of need of treatment or rehabilitation. State ex rel. K.G., supra; State in Interest of O.R., supra.
We find merit to EDC’s claim that the disposition hearing conducted was insufficient to meet the requirements of La. Ch. C. art. 893. Prior to rendering a disposition in this matter, the juvenile court heard testimony from EDC’s uncle and mother in support of his being released to parental |14custody. Regarding the state’s review of the child’s disposition, the following colloquy occurred between the juvenile court judge and a probation officer:
THE COURT:
All right. What about a report from the State, either written or oral recommendation?
PROBATION OFFICER:
Your honor, I was speaking with Mr. Crockett. As you know, this case is just now under disposition. We haven’t had the chance to staff this case and take into consideration what we’ve heard today.
* * *
PROBATION OFFICER:
Ah, as of that point, the only recommendation we could make at that point would be probation. But if we were to staff the case and take into recommendation, we know that under our scoring assignment he would come under non-secure in placement. We don’t have a report ready at this time.
THE COURT:
All right. Would there be any procedural problem if I — If I recommended non-secure custody, and it were staffed after today?
PROBATION OFFICER:
We can do that, yes sir. We will staff the case after your recommendation if order custody.
It is obvious from the previous exchange that the state conducted no predisposition investigation or individualized studies or evaluations regarding EDC’s need of treatment or rehabilitation. Nor was any such evidence offered. In fact, the probation officer, who was not sworn as a witness, made an impromptu disposition recommendation without having staffed the case for consideration or having performed an individualized |1Rscoring assignment. Essen *580 tially, the juvenile court rejected the probation officer’s recommendation without an individualized evaluation of EDO.
The Louisiana juvenile system is founded upon the philosophy of rendering dispositions, tailored to address the needs and abilities of the juvenile in question. State ex rel. D.J., supra at 4, 817 So.2d at 29. Although the proceedings were classified as a disposition hearing, it is clear that the juvenile court judge heard no evidence of EDO’s individual need for treatment or rehabilitation. EDO’s presentation of evidence in his own behalf shows that he did not waive the presentation of such evidence. Accordingly, it is necessary that we vacate the dispositions and remand for a disposition hearing in accordance with La. Oh. C. arts. 892 and 893. This determination precludes our consideration of the excessiveness of the custody dispositions.

Conclusion

For the foregoing reasons, the adjudications are affirmed. We vacate the juvenile court dispositions and remand for a dispo-sitional hearing.
ADJUDICATIONS AFFIRMED; DISPOSITIONS VACATED AND CASE REMANDED FOR FURTHER PROCEEDINGS.