JOY COSSICH LOBRANO, Judge.
_JjAs the result of an altercation that occurred on a school bus, the State filed a delinquency petition charging Q.T.[1] with simple battery, a violation of La. R.S. 14:35. Following a trial, the Orleans Parish Juvenile Court adjudicated Q.T. delinquent as charged and entered a disposition, ordering him to write a letter of apology to G.C., the victim. Q.T. appeals the adjudication and disposition.
At the trial, New Orleans Police Department Officer Tyrone Parker testified that he was called to investigate a disturbance on a school bus in the vicinity of Avalon Way and Curran Boulevard. When he arrived at the scene, he briefly spoke to the bus driver, Jonnie Jackson, and observed that G.C. had a bloody paper towel pressed to her nose. Officer Parker testified that he had interviewed both G.C. and *968 Q.T., but none of the other students on the bus. According to Officer Parker, Q.T. admitted that after G.C. kept hitting him, he hit her back. Based on his investigation, Officer Parker arrested Q.T. for committing a battery on G.C. He also identified Q.T. in court as the individual he had arrested.
The State next called Mr. Jackson, as a witness. Mr. Jackson testified that he noticed Q.T. standing up and punching someone in the bus. Mr. Jackson parked lathe bus. As he exited his seat to head to the back of the bus, Mr. Jackson saw Q.T. kicking G.C. Mr. Jackson identified Q.T. in open court as the individual he saw punching and kicking'G.C.
As its last witness, the State called G.C. to the stand. G.C. stated that she was a student at Schaumberg Elementary School and rode the same bus as Q.T. According to G.C., she got out of her seat and hit Q.T. because on that particular day he had called her a “big fat humpty dumpty” and it made her really mad. G.C. explained that after she hit Q.T., she went back to her seat. Q.T. then approached her and started punching her in the face, and hitting her with his feet. G.C. stated that she sustained injuries, including a bloody nose, a swollen lip, and a scratch to her chin. G.C. testified that Q.T. called her names two to three times per week. She also identified Q.T. in court as the person who had hit her.
In his defense, Q.T. called W.M. to the stand. W.M. testified that he was a student at Schaumberg Elementary School and was on the bus the day of the incident between Q.T. and G.C. W.M. stated that he was in the back seat, and Q.T. was seated in front of him. W.M. stated that G.C. was seated near Q.T., but was not in her usual seat. W.M. stated that G.C. was “fussing” with Q.T. while Q.T. listened to music on his phone. W.M. stated that G.C. “smacked” Q.T. W.M. noted that he heard Q.T. state that he would not hit G.C. W.M. testified that G.C. smacked Q.T. a second time. W.M. stated that Q.T. hit G.C. back after she smacked him the second time. W.M. noted that Q.T. had to get up from his seat to hit G.C., and that the first time Q.T. hit G.C., she was in her seat. W.M. testified that he saw Q.T. hit G.C. about five times and that he then stopped. W.M. stated that the bus driver was off the bus talking to a parent when the incident occurred between Q.T. and G.C.
laNext, Q.T. called B.D. to the stand. B.D. testified that she was a student at Schaumberg Elementary School and rode the bus with Q.T. On the day of the incident, Q.T. was listening to music when B.D. heard G.C. taunt Q.T., calling him “a little boy.” According to B.D., G.C. hit Q.T., who sat there and did nothing. G.C. then hit Q.T. a second time. B.D. explained that Q.T. could not reach G.C. from his seat so he got up and hit G.C. after she hit him the second time. B.D. stated that the bus driver was not on the bus at the time the incident started. B.D. testified that she did not know why G.C. hit Q.T. because Q.T. and G.C. never really talked because G.C. normally sat in the front of the bus. B.D. stated that she never heard Q.T. making fun of any girls, including G.C.
After the conclusion of the testimony, the juvenile court found Q.T. committed a simple battery upon G.C. The juvenile court stated, “[t]he self-defense argument, I do not find it’s applicable, given the testimony from all of the witnesses that [G.C.], in fact, got up and went and sat down. And [Q.T.] had to get up and go back to [G.C.].” The juvenile court ordered that Q.T. write a letter of apology to G.C.
*969 In order to adjudicate a child delinquent, the State must prove beyond a reasonable doubt that the child committed the delinquent act alleged in the petition. La. Ch.C. art. 888. The standard for the State’s burden of proof in a juvenile delinquency proceeding is “no less strenuous then the standard of proof required in a criminal proceeding against an adult.” State in the Interest of A.G., 630 So.2d 909, 910 (La.App. 4 Cir. 12/30/93); State in the Interest of G.M., 617 So.2d 219, 221 (La.App. 5 Cir. 4/14/93). As a court of review, we grant great deference to the juvenile court’s factual findings, credibility determinations, and assessment of Lwitness testimony. State ex rel. W.B., 2008-1458, p. 1 (La.App. 4 Cir. 4/22/09), 11 So.3d 60, 61, writ denied, 2009-1129 (La.1/22/10), 25 So.3d 139.
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Jackson standard of review is applicable in juvenile delinquency cases. State in the Interest of T.E., 2000-1810, p. 4 (La.App. 4 Cir. 4/11/01), 787 So.2d 414, 417.
In addition, La. Const. art. V, § 10(B) mandates that an appellate court review both law and facts when reviewing juvenile adjudications. “While delinquency proceedings may in many ways implicate criminal proceedings, sometimes even mimicking them, they are nonetheless civil in nature.” State in the Interest of D.R., 2010-0405, p. 5 (La.App. 4 Cir. 10/13/10), 50 So.3d 927, 930. Therefore, as in the review of civil cases, a factual finding made by a trial court in a juvenile adjudication may not be disturbed by an appellate court unless the record evidence as a whole does not furnish a basis for it, or it is clearly wrong. See State in the Interest of Batiste, 367 So.2d 784 (La.1979); State ex rel. E.D.C., 39,892 (La.App. 2 Cir. 5/11/05), 903 So.2d 571; State ex rel. T.W., 2009-532 (La.App. 3 Cir. 10/7/09), 21 So.3d 465; State in the Interest of S.S., 557 So.2d 407 (La.App. 4 Cir.1990). In sum, we apply the “clearly wrong-manifest error” standard of review to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt.
[.¡Louisiana defines a “battery” as “the intentional use of force or violence upon the person of another.” La. R.S. 14:33. A “simple battery” is defined as “a battery committed without the consent of the victim.” La. R.S. 14:35.
In his assignment of error, Q.T. argues that the juvenile court erred in adjudicating him delinquent because the State failed to establish that G.C. did not consent to being struck when she initiated the fight. He cites provisions in the Modem Penal Code in support of his argument that G.C. consented to the battery by initiating the fight. While a majority of states have adopted the Modem Penal Code, Louisiana has not done so.
We note that “consent” is not defined by the statute. Nevertheless, “consent” is generally understood to mean “agreement, approval, or permission as to some act or purpose.” BLACK’S LAW DICTIONARY 346 (9th ed. 2009).
In this case, G.C. testified that she did not want to fight Q.T., but that day he made her mad by calling her names. G.C. testified that after hitting Q.T., she returned to her seat and did not want Q.T. to hit her. Both W.M. and B.D. testified that Q.T. had to exit his seat in order to hit G.C. There is no evidence that G.C. agreed, approved, or gave permission to *970 Q.T. to hit her. Q.T.’s argument that G.C. consented to the use of force is speculative at best. In turning away from Q.T. and returning to her seat, out of Q.T.’s reach, any implied agreement, approval, or permission to fight came to end.
In viewing the testimony in a light most favorable to the prosecution, any rational trier of fact could find that the State proved all the essential elements of a simple battery. Q.T. used force or violence upon G.C. without her consent. The assignment of error lacks merit.
| (¡Lastly, Q.T. argues that he should not be punished where the evidence shows G.C.’s aggressive words and actions demonstrated a willingness to fight and precipitated his reaction. We disagree. Whether or not G.C. provoked the physical assault is irrelevant. La. R.S. 14:19(A) provides that “[t]he use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person ..., provided that the force or violence used must be reasonable and apparently necessary to prevent such offense.” In this case, Q.T.’s action was retaliatory and not for the purpose of preventing a forcible offense, as is evident by the fact that after G.C. returned to her seat, Q.T. exited his seat, approached her and commenced the assault. Also, the violence employed by Q.T. was not a reasonable response, as is evident by the extent of G.C.’s injuries.
Accordingly, we affirm the adjudication of delinquency for the offense of simple battery.
AFFIRMED

. Pursuant to Rules 5-1 and 5-2 of the Uniform Rules — Courts of Appeal, the initials of the juveniles involved in this matter will be used instead of their names.