STATE OF LOUISIANA IN
THE INTEREST OF A.P.

\*     NO. 2020-CA-0623

\*

    COURT OF APPEAL

\*

    FOURTH CIRCUIT

\*

    STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
JUVENILE COURT ORLEANS PARISH
NO. 2018-064-01-DQ-B, SECTION "B"
Honorable Tammy M. Stewart, Judge
\* \* \* \* \* \*
**Judge Daniel L. Dysart**
\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge
Regina Bartholomew-Woods)

Jason R. Williams
DISTRICT ATTORNEY
G. Ben Cohen
ASSISTANT DISTRICT ATTORNEY
Adele Krieger
ASSISTANT DISTRICT ATTORNEY
Parish of Orleans
619 S. White Street
New Orleans, LA 70119

Katherine M. Franks
LOUISIANA APPELLATE PROJECT
P. O. Box 220
Madisonville, LA 70447
      COUNSEL FOR DEFENDANT/APPELLANT

**REVERSED AND
RENDERED**

**April 21, 2021**

*DLD*
*RLB*
*RBW*

This is a juvenile delinquency appeal. The State filed a delinquency petition against the juvenile, A.P.,[1] for one count of second degree robbery, in violation of La. R.S. 14:64.4. At the conclusion of the hearing, the juvenile court found A.P. delinquent for the offense of second degree battery. The signed written judgment, rendered on the same date, reflected an adjudication for second degree robbery. At the disposition hearing, the juvenile court sentenced A.P. to a two-year sentence, suspended, with special conditions for second degree robbery. A.P. appeals his delinquency adjudication and sentence.

Finding the evidence insufficient to adjudicate A.P. delinquent of any offense against the victim, we reverse the judgment and dismiss the petition with prejudice.

## BACKGROUND

---

[1] Pursuant to the confidentiality requirements regarding juvenile proceedings as set forth in La. Ch.C. art. 412, we refer to the juvenile by his initials.

The State's second-degree robbery charge against A.P. and co-defendant, K.H.,[2] alleged the juveniles took a cell phone from the victim, Mark Rivero. At the adjudication hearing, Mr. Rivero testified that on the night of January 26, 2018, he left work to go to the Golden Lantern bar for a drink. In the middle of his first drink, he received a telephone call and walked out of the bar onto Royal Street because the bar was too loud. It was still noisy on Royal Street, so he walked towards the 700 block of Barracks Street. Mr. Rivero said he felt something hit him on the back of the head as he started his walk back towards the bar. He saw a person on a bicycle with a hoodie pass him on his left side and three other cyclists pass him on the left-hand side of the street. When Mr. Rivero was hit from behind, he yelled "what the hell are you doing?" Another cyclist who had ridden in front of the others got off his bicycle, took off his hoodie and walked aggressively towards Mr. Rivero. Mr. Rivero described this individual as a young African-American male with dreadlocks. Mr. Rivero could not ascertain exacting features because it was dark. As the "aggressive" walker/cyclist approached, six other cyclists began to surround him. At this point, Mr. Rivero decided to run. While running, Mr. Rivero felt something push him from behind. He tripped and fell on a concrete step, causing broken teeth and a fractured kneecap. Mr. Rivero's glasses came off his face and his cell phone flew out of his hand. Mr. Rivero said he felt dazed and might have lost consciousness for a few minutes. When Mr. Rivero looked up, he saw one of the cyclists standing over him, smiling and taunting him with Mr. Rivero's cell phone. Mr. Rivero said he tried to chase the cyclist;

---

[2] A.P. and K.H. were jointly tried as co-defendants. However, this opinion reviews only A.P.'s adjudication.

however, he was unable to do so because of his injuries. Mr. Rivero heard neighbors shout at the cyclists, at which point, the cyclists rode away. Mr. Rivero admitted that he was unable to make an identification and would not recognize the cyclist who took his cell phone. The State played a video which showed a portion of Mr. Rivero's encounter with the cyclists (the "Barracks Street video"). Mr. Rivero said the video accurately depicted the encounter.

On cross-examination, Mr. Rivero admitted he could not identify A.P. or K.H. as the perpetrators, though he believed the person with the dreadlocks who had aggressively approached him was the same one who took his cell phone. Mr. Rivero conceded that he had been dazed, he did not have on his glasses, and that his vision without glasses "was not great." Mr. Rivero spoke with the police over the telephone about the robbery on the following day and said he had no recollection of ever telling the police that the cyclists had struck him. Mr. Rivero also stated that he never engaged in any type of identification process of the perpetrators for the police. He reiterated that he was unsure as to whether the cyclist with the short dreadlocks was the same one who taunted him as he had been dazed and without his glasses.

On re-direct examination, Mr. Rivero said he believed all the cyclists acted in concert.

Detective Patrick Guidry, the officer assigned to conduct a follow-up investigation of the robbery, spoke to Mr. Rivero over the phone. He claimed that Mr. Rivero told him that he was attacked, punched, and kicked repeatedly. Mr. Rivero told Det. Guidry that he could not recall details about the perpetrators' faces and could not pick anyone out of a line-up. Det. Guidry testified that he utilized videos obtained from the robbery scene—the Barracks Street video—and a

3

video taken outside of the Port of Call restaurant (the "POC" video) to help identify A.P. and K.H. as suspects.[3] Det. Guidry noted that the Port of Call restaurant is located on Esplanade Avenue, about three blocks from the robbery scene. Det. Guidry described the two incidents in the videos as similar in that the youths were on bicycles, wore hoodies, and attacked persons in the French Quarter. Det. Guidry obtained the POC video from his District Commander. He said he was told that the POC video was taken of events from the same night of the robbery; however, he admitted the time stamp on the POC video was dated the following day, January 27, 2018. Det. Guidry testified that he did not realize that the POC video was dated January 27, 2018 until the date of trial. Over defense objections, the juvenile court admitted the POC video into evidence.[4] Det. Guidry testified that the POC video showed K.H. placing his finger close to someone's face and that A.P. was standing next to him. Det. Guidry obtained the arrest warrant for second degree robbery based on his identification of A.P. from the POC video.

On cross-examination, Det. Guidry admitted that he conducted no follow-up investigation with POC employees to discuss the details of the POC incident. In particular, he did not inquire whether that incident happened on January 26, 2018 or January 27, 2018, the date the POC video was time-stamped.[5] He reiterated that his identification of A.P. resulted from the POC video and acknowledged that

---

[3] Det. Guidry also testified that he saw A.P. and K.H. in another video arising out of a Mardi Gras parade route shooting about two weeks after the robbery. During the investigation, he saw K.H. and recognized him from the POC video.

[4] Prior to the start of trial, the juvenile court denied K.H.'s motion to exclude the POC video.

[5] No charges or arrests were made resulting from the POC incident.

4

A.P.'s face was not shown on the Barracks Street video. The following exchange took place between A.P.'s counsel and Det. Guidry:

> Q. But you can't see the faces of the people that are on the Barracks Street video?
>
> A. No. No, you can see some likeness of them, but no you really- - -
> No---that's correct you don't see the exact same facial features.

The State did not call any other witnesses. At the conclusion of the proceedings, the juvenile court adjudicated A.P. delinquent for second degree battery. A.P. filed a motion to vacate his adjudication, which was denied. At the disposition hearing, the juvenile court ordered A.P. to serve two years in the custody of the Department of Public Safety and Corrections (OJJ) arising out of its adjudication of A.P. as delinquent for second degree robbery. The juvenile court suspended the disposition and placed A.P. on probation for a period of two years with certain special conditions. This appeal timely followed.

## ASSIGNMENTS OF ERROR

A.P. alleges the following assignments of error:

> 1. The evidence was insufficient to establish identity or specific intent beyond a reasonable doubt;
>
> 2. The juvenile court judge adjudicated A.P. delinquent for a different offense in the transcript than the offense named in the disposition judgment;
>
> 3. The juvenile court erred in allowing "other crimes evidence" admitted without notice to the defense and using that evidence to find A.P. delinquent; and
>
> 4. The juvenile court issued erroneous rulings which impeded A.P.'s right to a fair trial.

## ERRORS PATENT

As established in *State ex rel. A.H.*, 2010-1673, p. 9 (La. App. 4 Cir.4/20/11), 65 So.3d 679, 685, a juvenile delinquency adjudication warrants an errors patent review. In the present matter, we find an error patent as noted in A.P.'s second assigned error. The transcript shows the juvenile court found A.P. delinquent for second degree battery, whereas, the written disposition shows he was sentenced for second degree robbery, the charged offense. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. *State v. Lynch*, 441 So.2d 732, 734 (La. 1983) (citation omitted). Nonetheless, we decline to apply that principle in the present matter. Here, A.P. was tried for second degree robbery, not second degree battery.[6] At a minimum, A.P. asserts the matter should be remanded to correct the discrepancies between the judgments. The State suggests that the juvenile court misspoke when it rendered the second degree battery adjudication and would not contest a remand to correct the record regarding the discrepancies.

Notwithstanding the discrepancies between the judgments, the first prong of A.P.'s assigned error regarding the sufficiency of the evidence maintains that the State offered insufficient evidence to identify him as the perpetrator. As that claims proves valid, a remand to correct the record is unwarranted. We have a complete record before us to review the sufficiency of the State's evidence to identify A.P. Accordingly, rather than order a remand, we shall maintain our appellate review to determine whether the State's evidence sufficiently identified A.P. as delinquent for any offense.

## STANDARD OF REVIEW

---

[6] Pursuant to La. R.S. 14.64.4, "[s]econd degree robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another when the offender intentionally inflicts serious bodily injury."

6

This Court discussed the standard of review to adjudicate a child delinquent in *State of Louisiana in the Interest of S.J.*, 2013-1025, pp. 2-4 (La. App. 4 Cir. 11/6/13), 129 So.3d 676, 678-79, as follows:

> In order to adjudicate a child delinquent, the State must prove beyond a reasonable doubt that the child committed the delinquent act in the petition. La. Ch.C. art. 883. The standard for the State's burden of proof in a juvenile proceeding is "no less strenuous than the standard of proof required in a criminal proceeding for an adult." *State ex rel. C.B.*, [20]09-1114, p. 6 (La. App. 4 Cir. 12/16/09), 28 So.3d 525, 528, *citing*, *State in the Interest of A.G.*, 630 So.2d 909, 910 (La. App. 4 Cir. 1993). As a court of review, we grant deference to the juvenile court's factual findings, credibility determinations, and assessment of witness testimony. *State ex rel. W.B.*, [20]08-1458, p. 1 (La. App. 4 Cir. 4/22/09), 11 So.3d 60, 61.
>
> In evaluating the sufficiency of the evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 560 (1979). The *Jackson* standard of review is applicable in juvenile delinquency cases. *State in the Interest of T.E.*, [20]00-1810, p. 4 (La. App. 4 Cir. 4/11/01), 787 So.2d 414, 417.
>
> In addition, La. Const. art. V, §10(B) mandates that an appellate court review both law and facts when reviewing juvenile adjudications. "While delinquency proceedings may in many ways implicate criminal proceedings, sometimes even mimicking them, they are nonetheless *civil* in nature." *State in the Interest of D.R.*, [20]10-0405, p. 5 (La. App. 4 Cir. 10/13/10), 50 So.3d 927, 930. (Emphasis supplied). Therefore, as in the review of civil cases, a factual finding made by a trial court in a juvenile adjudication may not be disturbed by an appellate court unless the record as a whole does not furnish a basis for it, or is clearly wrong. *State in Interest of K.G.*, [20]11-1559, p. 4 (La. App. 4 Cir. 3/21/12), 88 So.3d 1205, 1207, citing *State in the Interest of Batiste*, 367 So.2d 784 (1979); *State in the Interest of S.S.*, 557 So.2d 407 (La. App 4th Cir. 1990); *State ex rel. E.D.C.*, 39,892 (La. App. 2 Cir. 5/11/05), 903 So.2d 571. In sum, we apply the "clearly wrong-manifest error" standard of review to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt.

**DISCUSSION**

*Sufficiency of the Identification Evidence*

7

In order to convict or render a delinquency adjudication, our jurisprudence requires the State to prove the identity of the perpetrator in addition to the statutory elements of the charged offense. *State in the Interest of K.D.*, 2013-1274, p. 6 (La. App. 4 Cir. 4/9/14), 140 So.3d 182, 186 (citations omitted). The State must negate any reasonable probability of misidentification in order to meet its burden of proof when the key issue is identification. *Id.*

In the case *sub judice*, Mr. Rivero could not identify the perpetrators who chased and pushed him onto a concrete step and took his cell phone. He did not identify A.P. as one of the perpetrators in open court or from the Barracks Street video, which was played and introduced into evidence. Similarly, Det. Guidry could not identify A.P. as the perpetrator from the Barracks Street video. As referenced herein, Det. Guidry admitted that he could not facially identify any of the perpetrators from the Barracks Street video. Instead, Det. Guidry's positive identification of A.P. came from events depicted in the POC video, a video time-stamped as occurring a day after the alleged robbery. While A.P.'s presence in the POC video may have provided Det. Guidry with probable cause to make an arrest, the POC video could not serve to identify A.P. as one of the perpetrators in the Barracks Street video where the perpetrators' faces were not visible. Det. Guidry was not an eyewitness to the robbery nor did the State call other persons as witnesses, such as the neighbors who assisted Mr. Rivero at the scene.

The State concedes that A.P. is not identifiable from the Barracks Street video. As such, the State did not meet its burden of proof to negate any reasonable probability of A.P.'s misidentification. Accordingly, any finding by the juvenile court that the State's evidence identified A.P. as the perpetrator was manifestly erroneous.

8

As with a criminal proceeding, when the reviewing court in a juvenile proceeding finds that the evidence is insufficient to support an adjudication, the reviewing court must enter a judgment dismissing the delinquency petition with prejudice. *State of Louisiana in Interest of J.P.*, 2019-0542, p. 7 (La. App. 4 Cir. 9/25/19), 280 So.3d 245, 251.[7] We apply that precept in the present matter.

## CONCLUSION

Based on the foregoing reasons, we reverse the adjudication and the disposition. The delinquency petition is hereby dismissed with prejudice.

**REVERSED AND RENDERED**

---

[7] Having found the State's failure to identify A.P. as the perpetrator precluded any delinquency adjudication, we pretermit discussion of A.P.'s remaining assignments of error.