895 So.2d 40 (2005)
STATE of Louisiana
v.
Grecory SEARLS.
No. 04-KA-790.
Court of Appeal of Louisiana, Fifth Circuit.
January 25, 2005.
*41 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Andrea F. Long, Martin A. Belanger, Jr., Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, Louisiana, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS, and CLARENCE E. McMANUS.
SOL GOTHARD, Judge.
Defendant, Grecory Searls, appeals his conviction and sentence on a charge of simple burglary in violation of La.R.S. 14:62. For reasons that follow, we affirm both the conviction and the sentence.
The record shows that defendant was arraigned on July 31, 2002 and pled not guilty. On October 31, 2002, defendant's motion to suppress identification was denied. The case was tried on February 13 and 14, 2003 by a six-person jury which found defendant guilty as charged. On February 24, 2003, defendant's motion for new trial was denied. The trial judge sentenced defendant on February 27, 2003 to imprisonment at hard labor for five years. On that same date, the State filed a multiple bill alleging defendant to be a fourth felony offender. Defendant stipulated to being a third felony offender. The trial judge vacated the original sentence and sentenced defendant to imprisonment at hard labor for twelve years. Defendant's motion to reconsider both sentences was denied, and his motion for appeal was granted.

FACTS
At trial George Lambert testified that, on Saturday, June 8, 2002, at approximately 9:30 a.m., he walked outside of Briggs Equipment, his place of employment, heard something, walked around a service van parked right outside the door, and observed a man, later identified as defendant, rummaging through his vehicle. Lambert also observed what appeared to be a "getaway" vehicle behind his service van which he described as a white Ford Taurus from the mid-80's or early 90's with a Jesuit High School sticker across the rear window.
Lambert explained that there was someone in the front passenger seat of the Ford Taurus, but that he did not get a very good look at that individual. Lambert, who was approximately ten feet from his vehicle at that time, saw defendant inside his vehicle in the back seat leaning over into the front seat with the rear door open. He testified that he got a good look at defendant, that there was bright sunlight, and that he observed the entire side of defendant's face.
Lambert was unsure whether defendant had any weapons, so he went back inside *42 the business and dialed 911. When Lambert realized that a co-worker was there, he hung up the phone and explained to his co-worker what had occurred. Lambert called 911 again and advised the operator he needed a deputy. After he called 911, Lambert went back outside to make sure nobody was still out there.
Lambert checked his vehicle and noticed that a pair of bolt cutters was missing. The deputies arrived and called crime scene technicians. Lambert told Deputy John Venture that defendant was a black male, possibly in his mid-20s to early 30s, that defendant was larger than he was, and that he did not remember what clothing defendant was wearing.
A few weeks later, on July 1, 2002, Lambert saw a white Ford Taurus with a Jesuit sticker on the rear window traveling on River Road less than two blocks from the crime scene. Afterwards, he called the Jefferson Parish Sheriff's Office (JPSO) and told them he saw the vehicle that was at the scene of the burglary on June 8.
Lambert received a call from the JPSO informing him that they would like for him to come and possibly make an identification. Lambert went to Edwards Avenue and Mounes Drive where he identified defendant as the perpetrator. He also positively identified defendant in court. Following Lambert's testimony, the State rested its case.
Deputy John Venture, who was called as a witness by the defense, testified that he wrote the police report in connection with this matter, and that the victim had described the perpetrator as being twenty to thirty years old. He explained that on June 8, the victim was very upset, and that he had to ask the victim to calm down so he could get information from him.
Deputy Venture testified that on July 1, the victim came to the 1000 block of Edwards Avenue and Mounes Drive. He asked the victim if any vehicle at that location may have been involved in the burglary, and the victim pointed out a white Ford Taurus with a Jesuit High School sticker on it. Deputy Venture asked the victim to view the suspect. Deputy Uloth took defendant out of the vehicle, and the victim positively identified defendant as the individual who burglarized his vehicle. Deputy Venture placed defendant under arrest. He denied brutalizing defendant at any point.
Deputy Damon Uloth, who was called as a witness by the defense, testified that, on July 1, 2002, defendant was in the rear of his police vehicle located at Edwards and Mounes. He further testified that the victim had no doubt when he identified defendant that that was the individual who robbed him. Deputy Uloth stated that he did not find Lambert's bolt cutters in defendant's vehicle. He denied using his night club on defendant or beating him up. He did not see anyone else pull a night club on defendant.

LAW
In two assignments of error to this Court, defendant argues that the victim's identification of him is unreliable and therefore, is insufficient to support his conviction of simple burglary.
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.
In the instant case, defendant was convicted of simple burglary which is defined in La.R.S. 14:62 as "the unauthorized entering *43 of any ... vehicle ..., with the intent to commit a felony or any theft therein[.]"
In addition to proving the statutory elements of the charged offense at trial, the State is required to prove the identity of the perpetrator. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Vasquez, 98-898 (La.App. 5 Cir. 2/10/99), 729 So.2d 65, 69.
The factors to be considered in assessing the reliability of an identification include opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the prior description of the criminal, the level of certainty displayed at the confrontation, and the time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481.
As a general rule, one-on-one identifications are not favored. However, under certain circumstances, these identifications are permissible. State v. Jackson, 96-661 (La.App. 5 Cir.4/9/97), 694 So.2d 440, 447. This is particularly true when the one-on-one identification is closely associated in time with the commission of the crime and where the suspect is returned to the location of the crime for immediate identification. State v. Robinson, 404 So.2d 907, 909 (La.1981). Such identifications promote fairness by assuring reliability and the prompt release of innocent suspects. State v. Robinson, supra.
In Winfrey, 703 So.2d at 70, defendant argued that the identification procedure was suggestive because he was alone in the backseat of a police car and in handcuffs at the time he was identified by the victim and an eyewitness. Defendant contended that there was a substantial likelihood of misidentification because the witnesses could not have seen the robber's face since the perpetrator wore a ski mask.
This Court stated that, applying the Manson v. Brathwaite factors, even if the identification was suggestive, the identification did not present a substantial likelihood of misidentification. It noted that the victim had ample opportunity to view defendant at the crime scene, that her prior description of defendant and his car were accurate, that the time between the robbery and confrontation was short, and that she positively identified defendant as the robber at the scene. This Court found that the identification was not suggestive nor was there a substantial likelihood of misidentification and, therefore, the trial court did not err in denying defendant's motion to suppress the identification.
In State v. Gibbs, 03-967 (La.App. 5 Cir. 12/30/03), 864 So.2d 866, 871-874, defendant, who was convicted of simple burglary and aggravated flight from an officer, contended that the evidence was insufficient to prove his identity because the deputy only viewed defendant for one or two seconds in the midday sun as the car sped past him, the only evidence implicating defendant was the deputy's suspect identification, defendant was handcuffed in the back of the police car when he was identified, and defendant was forty-eight years old, over six feet tall and weighed over 200 pounds at the time of the offense but the victim described the suspect as nineteen to twenty-five years old, five feet, ten inches to six feet tall, and 150 to 160 pounds.
This Court found that the State negated the likelihood of misidentification by presenting evidence that the deputy had the opportunity to get a good look at the suspect *44 when the suspect drove past him, the identification occurred only one hour and forty minutes after the deputy first viewed the suspect, and the deputy unequivocally identified the defendant at trial. This Court found that the State's evidence sufficiently satisfied the Manson factors, and that there was not a substantial likelihood of misidentification with regard to the one-on-one identification procedure.
In the instant case, the State negated the likelihood of misidentification by presenting evidence that Lambert got a good look at defendant at the time of the offense; that Lambert observed the entire side of defendant's face; that the offense occurred at approximately 9:30 a.m.; that there was bright sun light when he saw defendant; that he was approximately ten feet away from his vehicle when he saw defendant; and that he remembered what defendant looked like because it "stuck" in his mind.
Additionally, Lambert testified as to the distinctive characteristics of the "getaway" vehicle defendant was driving at the time of the offense, i.e., a white Ford Taurus from the mid 80's or early 90's with a Jesuit High School sticker across the rear window, which defendant later saw less than two miles from where the crime occurred. Lambert positively identified defendant after the police apprehended him and testified that no one coerced him into making the identification.
Deputy Venture testified that the victim was not hesitant in any way when he made the identification, and Deputy Uloth testified that the victim had no doubt when he identified defendant that that was the individual who burglarized his vehicle. Also, Lambert unequivocally identified defendant at trial and testified that there was no doubt in his mind, and that he was one hundred percent certain that defendant was the perpetrator of the offense.
Defendant argues that the victim described the perpetrator as being in his twenties, but that he was in his fifties. However, as was noted in the State's brief, there was no evidence of defendant's actual age produced at trial. Although defendant's date of birth is recorded on the traffic ticket marked as Exhibit D-3, that exhibit was admitted only for record purposes and was not viewed by the jury. The only testimony that could be located in the record regarding defendant's age came from the victim, who testified that defendant did not look twenty-one years old, and Deputy John Venture, who testified that defendant looked a little older than twenty years old.
Although the identification occurred approximately three weeks after the offense, and not shortly after the crime occurred as was the case in Winfrey and Gibbs, we find that the State's evidence sufficiently satisfied the Manson factors, and that there was not a substantial likelihood of misidentification with regard to the one-on-one identification procedure.
Although defendant argues that the evidence was insufficient to support the conviction, the jury heard all the evidence and chose to accept the testimony of the State's witnesses and reject defendant's argument that he did not commit the crime.
The trier of fact shall evaluate the witnesses' credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Rivers, 01-1251 (La.App. 5 Cir. 4/10/02), 817 So.2d 216, 219, writ denied, 02-1156 (La.11/22/02), 829 So.2d 1035. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for the requisite factual findings. State v. Rivers, supra, at 219. It is the fact finder's *45 function to determine the weight of the evidence bearing on defendant's identification. It is not the appellate court's function to reevaluate the credibility choices by the fact finder. State v. Spencer, 93-571 (La.App. 5 Cir. 1/25/94), 631 So.2d 1363, 1370, writ denied, 94-488 (La.2/3/95), 649 So.2d 400.
Consequently, after viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found, beyond a reasonable doubt, that the evidence was sufficient to support the conviction and that defendant was the perpetrator of the crime.
Accordingly, we find no merit in defendant's assignments of error and affirm the conviction and sentence.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The trial judge told defendant he had "two years to file for postconviction relief." However, this advisal was incomplete, as La.C.Cr.P. art. 930.8 provides that a defendant has two years after the judgment of conviction and sentence has become final to file for post-conviction relief. Therefore, we hereby remand this matter to the district court, and order the court to inform defendant of the provisions of La.C.Cr.P. art. 930.8 by sending appropriate written notice to defendant within ten days of the rendition of the opinion and to file written proof that defendant received the notice in the record of the proceedings. State v. George, 99-887 (La.App. 5 Cir. 1/4/00), 751 So.2d 973, 975.
AFFIRMED AND REMANDED WITH ORDER.