JAMES F. McKAY III, Judge.
I,STATEMENT OF CASE
On July 28, 2009, the State filed a bill of . information charging Loel McNair, the appellant, with forgery, a violation of La. R.S. 14:72.[1] On August 18, 2009, he pleaded not guilty. On August 26, 2009, the appellant was ordered to perform one hundred hours of community service. On September 14, 2009, he filed motions to suppress the evidence, the statement, and the identification. A hearing on the motions was set and continued because a diversion review hearing had been set. On January 19, 2010, the appellant was accepted into the diversion program. On July 28, 2010, he did not appear for the diversion hearing; he had dropped out of the program. On August 11, 2010, he failed to appear for a scheduled pre-trial conference, and an alias capias with no bond issued. The appellant was arrested on November 17, 2010. On December 2, 2010, he appeared, and a hearing on the motions was set for January 7, 2011. On December 14, 2010, the trial court recalled the capias and released the appellant on the original bond. After counsel withdrew, on January 21, 2010, the court appointed Orleans Public Defenders 12(OPP) as counsel to represent the appellant and ordered him to perform community service.
On March 25, 2011, the appellant elected a bench trial. A hearing on the motions was held, and the court found probable cause and denied the motion to suppress evidence. On May 81, 2011, the appellant noticed his intention to file for writs; the court denied the request for a stay order and set a return date on June 15, 2011. On June 14, 2011, this Court denied the appellant’s writ application (2011-K0766) wherein he argued that the trial court erred in denying his motion to suppress the evidence. Trial was set for June 16, 2011. On that date, the appellant elected a trial by jury, and the trial court allowed the jury trial to go forward. The State objected and noticed its intent to seek writs; the trial court denied a stay order. In the State’s writ (2011-K-0781) this Court granted a stay order and considered the State’s arguments. On June 17, 2011, this Court denied the writ and lifted the stay order. The State sought review. The Supreme Court granted the State’s writ, reversed the trial court’s decision allowing the appellant to revoke his valid waiver of the right to a jury, and remanded for further proceedings. State v. McNair, 2011-1285 (La.6/21/11), 64 So.3d 205. On June 21, 2011, a bench trial was held. The trial court found the appellant guilty of attempted forgery. On July 1, 2011, the court sentenced him to three years at hard labor, suspended, with three years of active probation. Special conditions include: obtaining a job; completing his G.E.D.; and paying $500.00 to the Judicial Expense Fund and $190.50 for court costs. The trial court stated that it may reconsider sentence status after eighteen months of no problems fulfilling the conditions. A probation status hearing was set for August 8, 2011.
*808 |sOn July 5, 2011, the appellant filed a motion for appeal and designation of record, which was granted. The court appointed the Louisiana Appellate Project (LAP) to represent him on appeal and stated that the appellant was working and was responsible for all costs. Notice of appeal was filed on July 6, 2011. On January 13, 2012, the appeal record was filed in this Court.
STATEMENT OF FACT
At the March 25, 2011 hearing on the motions, Officer Marshall Scallan testified that on June 6, 2009, he was assigned to the Eighth District Bourbon Street .Promenade; his partner was Officer Billy Tre-gle. The officer said that they were flagged down by the manager of the Mango Mango Daiquiri Shop and told that two men had attempted to pay for two alcohol drinks with a counterfeit twenty-dollar bill. According to the manager, the bartender had cheeked the bill with the counterfeit detector pen, and it indicated that the bill was counterfeit. The bogus bill was retrieved, and the two men walked out of the daiquiri shop. One of the men was wearing a red shirt, and one was wearing a green shirt. Officer Scallan spotted the two men in the same block. Officer Scal-lan testified: “[A]t that point we stopped them.” The two were later identified as Loel McNair, the appellant, and Kevin Matthews. Within minutes the bartender positively identified both men. Officer Scallan stated: “Myself and Officer Billy Tregle conducted a search incident to arrest where one gentleman had the 20 dollar bill that was marked with a counterfeit pen. The other gentleman had five, 100 dollar bills, which all contained the same serial number.” Officer Scallan said that the appellant had the twenty-dollar bill. The NOPD officers notified Secret Service Agent Sparks, who examined the bills and concluded that they were counterfeit. The agent also interviewed both men.
|4On cross-examination, after referring to his report, Officer Scallan agreed that McNair was in the red shirt, and Matthews was in the green shirt; Matthews produced the counterfeit twenty-dollar bill and gave it to the bartender in the daiquiri shop. The officer admitted that the bartender did not say that he saw the appellant with the counterfeit bill, but both men entered the daiquiri shop at the same time. The detective stated that both the appellant and Matthews were positively identified by the bartender within minutes of the incident. Detective Scallan testified that the two men were detained and under investigation, but then he said that they were handcuffed and told that they were under arrest. During the search incident to arrest, Officer Tregle found the twenty-dollar bill with the pen mark on the appellant. Counsel argued that the officers did not have probable cause to arrest the appellant when he did not produce the counterfeit twenty-dollar bill; evidence seized pursuant to search incident to an illegal arrest should be suppressed. Counsel argued that the intent to defraud is an element of fraud, and there was nothing to indicate that the appellant had any such intent.
The State argued that the officers were flagged down by the complaining or reporting witness from the daiquiri shop, who identified the appellant and Matthews within minutes of the attempted sale as the two men who tried to buy drinks with the counterfeit twenty-dollar bill. The State contended that the appellant, as well as Matthews, had the intent to defraud the bartender by paying with a counterfeit twenty-dollar bill. The State noted that apparently the appellant picked up the counterfeit twenty-dollar bill from the bar because it was found on his person minutes later. Defense counsel argued that *809 the appellant was with the man who pulled out the twenty-dollar bill, Kevin Matthews. The trial court noted | Bthat the appellant, who was “associated in the enterprise also happens to be in possession, according to the testimony, after he’s searched.”[2]
At the June 21, 2011 trial, Hal Burch testified that on June 6, 2009, he was the manager of the Mango Mango Daiquiri shops on Bourbon Street, and he received a call from Stephen, an employee at the 333 Bourbon Street location. The bartender provided a description of the two men who had attempted to purchase drinks with a counterfeit twenty-dollar bill. The manager spotted two men who fit the bartender’s descriptions. He alerted NOPD officers and provided them with the descriptions from the bartender. He said that the officers approached the two subjects between Old Absinthe House and the Hustler Club. On cross-examination Hal Burch agreed that the two men were in the same block as the daiquiri shop. He could not remember what color shirt each was wearing or the description by the time of trial.
Officer Marshall Scallan testified that he investigated the forgery on June 6, 2009. He stated that he and his partner were flagged down by the manager of the Mango Mango Daiquiri shops on Bourbon, and a description of the two suspects was provided to the officers. The two suspects, later identified as Loel McNair and Kevin Matthews, were in the same block of Bourbon Street. The officer said: “They were identified to us. Me [sic] and my partner had placed them under arrest.... ” Officer Scallan said that in a search incidental to that arrest, his partner, Officer Billy Tregle, found the counterfeit twenty-dollar bill in the appellant’s possession. Officer Scallan found five one-hundred dollar counterfeit bills containing the same serial number in Matthews’ possession. The officer said that | f;the bartender/cashier stepped outside the daiquiri shop and positively identified both men. The officers then relocated to the district station and notified Secret Service Agent Sparks, who conducted his own investigation.
Officer Billy Tregle testified that he was Officer Scallan’s partner. He said that on June 6, 2009 the officers were flagged down by the manager of the Mango Mango Daiquiri Shops. Once the officers were provided descriptions of the two suspects, who were allegedly involved in a forgery at the daiquiri shop and were still in the same block of Bourbon Street, they approached the two suspects. According to Officer Tregle, they advised the appellant and Matthews of their Miranda rights and arrested them; the two were positively identified by the bartender. Officer Tre-gle stated that he searched the appellant and found the counterfeit twenty-dollar bill (with the black mark on it) in his back right pocket. The officer said that they relocated to the station and contacted U.S. Secret Service Agent Sparks, who questioned both subjects. Officer Tregle said that the twenty-dollar bill still had the black mark left by the counterfeit identifying pen.
Secret Service Agent Joron Sparks testified that he was called by the NOPD officers. The agent stated that he could recognize immediately that the twenty-dollar bill was counterfeit; there was no hologram in the upper right corner of the note, and there was no signature strip in the note. Agent Sparks identified the counterfeit bills confiscated on that date; the *810 one-hundred-dollar bills all had the same serial number; and the twenty-dollar bill had marks from the counterfeit identifying pen. On cross-examination the agent admitted that normally bills that are evidence in ongoing investigations are not destroyed, but here these bills were destroyed. Stephen Kaup, the bartender at the Mango Mango Daiquiri Shop, |7testified that on June 6, 2009, a group of men (about four or five) entered the shop. One interacted with the bartender; the others were “kind of, like, next to him, but not at the bar.” The shorter guy, later identified as Kevin Matthews, placed the order for a large daiquiri and a shot of tequila; the total was $17.00. The bartender said that he asked for payment and identification. Matthews said that he did not have an ID and bumped the appellant, who showed his identification. Matthews pulled out a twenty-dollar bill; the bartender used the counterfeit identifying marker, and the mark turned black to indicate that the bill was counterfeit. Stephen Kaup said that he told the two that the twenty-dollar bill was counterfeit and took the drinks away. Matthews argued that it was not counterfeit, but they left. Although he did not see anyone pick up the bill, when they were gone, the twenty-dollar bill with the black mark was gone too. Stephen Kaup said that he informed his manager, who contacted the police. The bartender remembered the appellant because he had long dreadlocks and was wearing a bright red hat and bright red shirt; he was the one who provided identification or there would have been no sale. Stephen Kaup said that he saw them outside the daiquiri shop about one-half hour later and called his manager, who called the police. On cross-examination the bartender admitted that the man in the green shirt, Kevin Matthews, gave him the twenty-dollar bill. He said that he did not know which one took the twenty-dollar bill off the bar.
ERRORS PATENT
A review of the record reveals that there are no errors patent.
DISCUSSION
ASSIGNMENT OF ERROR NUMBER 1
IsThe appellant argues that the trial court erred by denying his motion to suppress the evidence. He argues that the officers had no probable cause to arrest him; the evidence seized pursuant to the search incidental to that illegal arrest should have been suppressed as fruit of the poisonous tree under Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The appellant contends that neither the bartender nor the manager of the Mango Mango Daiquiri Shop identified him as the man who attempted to use the counterfeit twenty-dollar bill to purchase drinks.
The State argues that the appellant was identified by the bartender working at the daiquiri shop. The State contends that the appellant was not just with the man who attempted to pass off the counterfeit bill; he participated in the purchase and was one of the intended recipients.
The appellant had previously filed an emergency pretrial writ application in this Court seeking review of the trial court’s denial of his motion to suppress evidence and raising this same argument that the officers did not have probable cause to arrest McNair and that evidence seized incidental to the illegal arrest should be suppressed. On June 14, 2011, this Court denied the writ. State v. McNair, 2011-0766, unpub. (La.App. 4 Cir. 6/14/11).
In State v. Wells, 2008-2262, pp. 4-5 (La.7/6/10), 45 So.3d 577, 580-81, the Supreme Court set out the standard of review:
*811 This court has recently restated the general rule that appellate courts review trial court rulings under a deferential standard with regard to factual and other trial determinations, while legal findings are subject to a de novo standard of review. State v. Hunt, 09-1589, p. 6 (La.12/1/09), 25 So.3d 746, 751, citing State v. Hampton, 98-0331, p. 18 (La.4/23/99), 750 So.2d 867, 884. When a trial court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no |flevidence to support those findings. Id. A “trial judge’s ruling [on a fact question], based on conclusions of credibility and weight of the testimony, is entitled to great deference and will not be disturbed on appeal unless there is no evidence to support the ruling.” State v. Bourque, 622 So.2d 198, 222 (La.1993).
The State bears the burden of proving the admissibility of the evidence seized without a warrant when the legality of a search or seizure is placed at issue by a motion to suppress evidence. LSAC. Cr.P. art. 703(D). A trial court’s decision relative to the suppression of evidence is afforded great weight and will not be set aside unless there is an abuse of that discretion. Hunt, 09-1589 at 7, 25 So.3d at 752.
“Probable cause to arrest exists when the facts and circumstances known to the arresting officer, and of which he has reasonable and trustworthy information, are sufficient to justify a man of ordinary caution in the belief that the accused has committed an offense.” State v. Surtain, 2009-1835, p. 7 (La.3/16/10), 31 So.3d 1037, 1043, quoting State v. Parker, 2006-0053 p. 2 (La.6/16/06), 931 So.2d 353, 355. When a person is lawfully arrested, police officers can search the person without a warrant as an incident to that arrest. State v. Jerome, 2007-1243, p. 3 (La.App. 4 Cir. 4/16/08), 983 So.2d 214, 216. See also State v. Taylor, 2007-0069 (La.App. 4 Cir. 6/27/07), 962 So.2d 480.
In reviewing a trial court’s ruling on a motion to suppress the evidence, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at the trial of the case. State v. Craft, 2003-1852, p. 5 (La.App. 4 Cir. 3/10/04), 870 So.2d 359, 363; State v. Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 137.
Here, Officers Scallan and Tregle were working on Bourbon Street when they were flagged down by Hal Burch, the manager of the Mango Mango Daiquiri shops. Officer Scallan was told that two men, one in a red shirt (the appellant) and one in a green shirt (Kevin Matthews) had entered the shop in the 300 block of |inBourbon Street and attempted to pay for two alcohol drinks with a counterfeit twenty-dollar bill. The man in the green shirt (Matthews) pulled out the twenty-dollar bill, but Matthews had no identification, and the sale could not be completed. The man in the red shirt (the appellant, McNair) pulled out his identification and showed it to the bartender. Then the bartender used the counterfeit identifying marker on the bill, and the mark turned black on the bill; the twenty-dollar bill was counterfeit. The man in the red shirt and the man in the green shirt were still in the 300 block of Bourbon Street when the officers approached Matthews and the appellant and arrested them. Officer Scallan said: “They [the men who used the counterfeit bill] were identified to us.” Within minutes Matthews and the appellant had been positively identified by the bartender, who stepped outside the daiquiri shop. The *812 facts and circumstances known to Officers Scallan and Tregle were provided by the bartender of the Mango Mango Daiquiri Shop, and the arrests were made within minutes of the use of the counterfeit twenty-dollar bill. The facts are sufficient to justify the belief that Matthews and the appellant had committed the crime of forgery or attempted forgery. The officers arrested the appellant and lawfully seized the counterfeit bill pursuant to that arrest. See State v. Taylor, 2007-0069, pp. 4-5, 962 So.2d at 482-83. This assignment lacks merit.
ASSIGNMENT OF ERROR NUMBER TWO
The appellant argues that the State failed to present evidence sufficient to uphold his conviction for attempted forgery. He argues that there was no testimony that he transferred the counterfeit bill; only Matthews handed the twenty-dollar bill to the bartender to pay for drinks. The appellant argues that the fact that he produced his identification that was necessary for the sale of the drink |nand the shot does not prove that he knew that the bill was counterfeit or that he transferred the twenty-dollar bill. The appellant concedes that he was in possession of the counterfeit bill when he was arrested and by that time knew that the bill was counterfeit; however, he claims that there was no proof that he had any intent to defraud anyone.
The State in its appellee brief argues that the appellant and Kevin Matthews approached the bar/counter in the daiquiri shop and drinks were ordered. The State contends that the appellant provided the required identification, and Matthews pulled out the counterfeit twenty-dollar bill. When the bartender/cashier used the marker to determine that the bill was counterfeit, they tried to convince him that the bill was not bogus. The State focuses on the fact that officers recovered a counterfeit twenty-dollar bill from the appellant and five counterfeit hundred-dollar bills from Matthews. The State notes that Agent Sparks identified those bills as counterfeit by pointing out obvious defects in the bills that could easily be noticed. Therefore, the State argues that the rational trier of fact could have easily found that all the elements of the crime were proven.
In State v. Kirk, 2011-1218, pp. 5-6 (La.App. 4 Cir. 8/8/12), 98 So.3d 934, 939, quoting State v. Huckabay, 2000-1082, p. 32 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1111, this Court discussed an insufficient evidence argument:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational | ^triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mus-sall; Green; supra. “[A] reviewing court is not called upon to decide wheth *813 er it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
In this case the State filed a bill of information alleging that Kevin Matthews and the appellant “did willfully and unlawfully issue or transfer, with intent to defraud, a forged writing purporting to have legal efficacy, to wit: counterfeit U.S. currency, known by Loel L. McNair and one Kevin Matthews each to be a forged writing.” La. R.S. 14:72 provides:
A. It shall be unlawful to forge, with intent to defraud, any signature to, or any part of, any writing purporting to have legal efficacy.
B. Issuing, transferring, or possessing with intent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute a violation of the provisions of this Section.
C. For purposes of this Section:
(1) “Forge” means the following:
(a) To alter, make, complete, execute, or authenticate any writing so that it purports:
(i) To be the act of another who did not authorize that act;
(ii) To have been executed at a time or place or in a numbered sequence other than was in fact the case; or
| is(iii) To be a copy of an original when no such original existed.
(b) To issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged in accordance with the meaning of Subpara-graph (l)(a).
(c) To possess a writing that is forged within the meaning of Subparagraph (1)(a).
(2) “Writing” means the following:
(a) Printing or any other method of recording information;
(b) Money, coins, tokens, stamps, seals, credit cards, badges, and trademarks; and
(c) Symbols of value, right, privilege, or identification.
D.Whoever commits the crime of forgery shall be fined not more than five thousand dollars, or imprisoned, with or without hard labor, for not more than ten years, or both.
An “intent to defraud” is an essential element of forgery. The Reporter’s Comment under La. R.S. 14:72 provides:
A general intent to defraud should be an essential element of forgery. However, it is unnecessary that an injury result from the actual consummation of the fraud, since the intent to defraud is sufficient. State v. McCranie, 192 La. 163, 187 So. 278 (1939). It is also unnecessary to prove that the offender intended to defraud any particular one, for if he intended to defraud any person the crime is complete. Hence it suffices if *814 the instrument does or may prejudice the rights of another. State v. LaBorde [Laborde ], 120 La. 136, 45 So. 38 (1907). The intent should be able to be inferred from the circumstances, as in the case of a forgery of a check the “jury ought to infer an intent to defraud the person who would have to pay the instrument if it were genuine * * * ”. State v. Dennett, 19 La.Ann. 395 (1867).
La. R.S. 14:27[3] provides in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
j * ⅜
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
La. R.S. 14:24 provides: “All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.”
In State v. Johnson, 2001-1281, p. 4 (La.App. 4 Cir. 4/10/02), 817 So.2d 283, 286, this Court discussed elements of the crime of forgery where counterfeit currency was involved:
For purposes of the forgery statute, “writing” means “money ... ”. La. R.S. 14:72 C(2)(b). An essential ingredient to the crime of forgery is the specific intent to defraud. State v. Wade, 375 So.2d 97 (La.1979); State v. Jackson, 258 La. 632, 247 So.2d 558 (1971); State v. Durham, 32-154 (La.App. 2 Cir. 8/20/99), 748 So.2d 1.
Specific intent is defined as that “state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1). See also State v. Hebert, 2000-1052 (La.App. 4 Cir. 4/11/01), 787 So.2d 1041, 1050; State v. Hall, 98-0667 (La.App. 4 Cir. 12/22/99), 750 So.2d 1105. Specific intent need not be proven as fact, but may be inferred from the circumstances and actions of the defendant. State v. Ricard, 98-2278, 99-0424 (La.App. 4 Cir. 1/19/00), 751 So.2d 393, writ denied, Richard v. State, 2000-0855 (La.12/8/00), 775 So.2d 1078.
In Johnson the defendant gave a Har-rah’s employee two counterfeit one-hundred-dollar bills and requested change. During questioning by the State Police troopers who were called, the defendant produced three more counterfeit hundred-dollar bills and offered conflicting explanations for the counterfeit currency. He was not cooperative and refused to give his name and social security number; he gave a false birthdate. The defendant argued that the State had not proved that the 11fihundred-dollar bills were counterfeit because no expert testified, but he had not objected to the testimony of the state trooper and casino employee that the bills were counterfeit in order to preserve it for *815 appellate review. This Court noted that two of the bills had the same serial number; at least one of those was counterfeit. The defendant also asserted that rational jurors would not have believed that he knew the bills were counterfeit or they would have accepted his explanation and not believed that he possessed the requisite intent to defraud. This Court stated that the jury found the defendant’s explanation incredible, and a reviewing court should not disturb the credibility decisions by the jury unless such findings are clearly contrary to the evidence. This Court concluded that viewing the evidence in the light most favorable to the State, the evidence was sufficient to support the defendant’s conviction for attempted forgery. Johnson, 2001-1281, pp. 5-6, 817 So.2d at 287.
The appellant and Kevin Matthews walked into the Mango Mango Daiquiri Shop in the 300 block of Bourbon Street with a couple of other people. Matthews (in a green shirt) ordered a daiquiri and a shot of tequila, and the appellant (in a red shirt) was standing next to him. The bartender prepared the daiquiri and the shot; he then asked for identification. Matthews said that he did not have identification, but the appellant produced his identification and handed it to the bartender. Without that identification there could have been no sale. Matthews then gave the bartender a twenty-dollar bill, which he tested with the counterfeit identifying marker and found to be counterfeit. From the actions of Matthews and the appellant, it can be inferred that they intended to defraud the bartender at the Mango Mango Daiquiri Shop and obtain the drink and the shot without paying for them with legitimate currency. When the bartender found out that the bill was |inbogus, Matthews and the appellant quickly left the shop, and the appellant apparently retrieved what he knew to be a counterfeit twenty-dollar bill as they exited because he had that bill with the black mark in his possession when the officers searched him incidental to his arrest minutes later. The police officers were flagged down, by the manager of the daiquiri shop who provided the bartender’s descriptions; the appellant and Matthews were still in the block of Bourbon Street where the daiquiri shop was located. The officers approached and arrested them. Within minutes Matthews and the appellant were positively identified by the bartender, who stepped outside the daiquiri shop. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact (here the trial judge) could have found the defendant guilty beyond a reasonable doubt of attempted forgery. This assignment of error lacks merit.
CONCLUSION
Based on the above and foregoing reasons we affirm the appellant’s conviction and sentence.
AFFIRMED

. Also charged with forgery in the same bill of information was Kevin Matthews a.k.a. Kevin Mathieu, who was found guilty of attempted forgery after a January 26, 2010 bench trial.

. Based on that Officer Scallan’s testimony at the suppression hearing, this Court had denied the defense writ seeking review of the trial court’s denial of his motion to suppress evidence.

. La. R.S. 14:27 was amended by La. Acts 2010, No. 531, § 1; however, the amendment only rewrote section D(2), which relates to punishment.