STATE OF LOUISIANA IN     *       NO. 2021-CA-0468
THE INTEREST OF S.C.

                              *       COURT OF APPEAL

                              *       FOURTH CIRCUIT

                              *       STATE OF LOUISIANA

                     * * * * * * *

APPEAL FROM
JUVENILE COURT ORLEANS PARISH
NO. 2021-011-09-DQ-F, SECTION "F"
Honorable Ranord J. Darensburg
* * * * * *
**Judge Regina Bartholomew-Woods**
* * * * * *
(Court composed of Judge Joy Cossich Lobrano, Judge Regina Bartholomew-Woods, Judge Dale N. Atkins)

G. Benjamin Cohen
Assistant District Attorney
Jason Rogers Williams
DISTRICT ATTORNEY
ORLEANS PARISH
619 S. White Street
New Orleans, LA 70119

       COUNSEL FOR APPELLEE/STATE OF LOUISIANA


Katherine M. Franks
LOUISIANA APPELLATE PROJECT
P.O. Box 220
Madisonville, LA 70447

       COUNSEL FOR APPELLANT/S.C.

                                        **AFFIRMED**
                            **NOVEMBER 29, 2021**

*RBW*

*JCL*

*DNA*

In this juvenile delinquency matter, S.C.[1] seeks appellate review of his delinquency adjudication and his disposition imposed for committing the offense of armed robbery with the use of a firearm, in violation of La. R.S. 14:64.3. For the reasons that follow, we find the evidence sufficient to adjudicate S.C. delinquent. Therefore, we affirm the juvenile court's adjudication and corresponding disposition.

## *FACTUAL BACKGROUND*

On January 6, 2021, at approximately 10:30 p.m., the victim, A.L., was returning home from work when she drove her red 2015 Nissan Altima into the parking lot of her apartment complex on Crowder Boulevard. In the car with her was her three and one-half month old daughter. Upon entering the complex, she

---

[1] Pursuant to the confidentiality records requirements set forth in La. Ch.C. art. 412 for juvenile proceedings, we refer to the juvenile and the victim by their initials.

observed two males walk past her. After she exited her vehicle, she went to the back seat to retrieve her diaper bag, and the two males she observed earlier walked up behind her. She testified that she heard a gun cock and slowly turned around to face the two males, one of whom was holding a handgun. A.L. observed the taller perpetrator, who was holding the handgun, wearing a dark green sweater with a hood. He had a surgical mask on and had a darker complexion. A.L. described the perpetrator's sweater as an "army-colored green," and the weapon he was holding was a black or dark gray "regular" handgun. The two males demanded A.L.'s money and keys, and A.L. complied. The two males allowed A.L. to remove her child from the car seat before driving away in A.L.'s car. A.L. then went to her apartment and called the police.

Officer Jacob Mitchell ("Officer Mitchell") of the New Orleans Police Department ("NOPD") testified that he was dispatched to investigate a carjacking on January 6, 2021. He interviewed A.L. and relayed the information he obtained to dispatch. Officer Mitchell stated that he did not see anyone when he arrived at the crime scene; in particular, he neither saw a red Nissan Altima fleeing the scene, nor anyone at the crime scene in a dark hoodie or with a firearm. He also did not see S.C. at the crime scene.

Detective Jameson Diesburg ("Detective Diesburg") testified that he was part of an investigation of an armed robbery on Crowder Boulevard on the night of January 6, 2021, and the early morning hours of the following day. He explained that initially he was investigating another armed robbery when the armed robbery

2

on Crowder Boulevard was broadcast over the radio. Approximately an hour after the initial radio broadcast, Detective Diesburg observed a red Nissan Altima travel past him on Morrison Road. Detective Diesburg heard what he believed to be a tire popping on the Altima. He found it odd that the Altima continued to travel on the flat tire. Consequently, Detective Diesburg decided to follow the Altima and found the car on a side street with two subjects trying to change the tire. Detective Diesburg called for backup. When additional police units arrived, the Altima had moved further down the street. As the police units approached the Altima, the two subjects Detective Diesburg witnessed changing the tire, fled from the vehicle. The police set up a perimeter and the subjects were subsequently apprehended.

Detective Sasha Tousant ("Detective Tousant") testified that she investigated the incident that led to S.C.'s arrest. Following the report of an armed robbery with a firearm, Detective Tousant relocated to A.L.'s apartment to obtain general information. About an hour after the incident, Detective Tousant learned that police units spotted A.L.'s vehicle and observed subjects run from the vehicle. Detective Tousant went to the area where the subjects and vehicle were seen. She arrived after the subjects were apprehended. Detective Tousant testified that at the time of the apprehension, S.C. wore a camouflage green hoodie, a white colored belt, and a light blue "Corona" mask. Detective Tousant recognized the hoodie at trial as the one S.C. was wearing when he was apprehended. She also stated that she noticed during her investigation a black small caliber firearm with blue tape on the driver's seat floor inside the Altima. Detective Tousant identified the gun—a

black Beretta—as the gun that was found inside A.L.'s red Nissan Altima.

After the victim's car was found, A.L. was asked to do a show-up identification to identify the perpetrators. Detective Tousant supervised the show-up identification, which Detective Tousant testified took place around 1:00 a.m. on January 7, 2021. Handcuffs were removed from the apprehended subjects and two marked NOPD police units turned on their overhead lights. Additionally, Detective Tousant directed the officers flanking the subjects to shine their flashlights on the subjects' bodies. Detective Tousant testified that she was not in the police unit with A.L. during the show-up identification process.

A.L. stated that the officer explained the procedure to her and that if she did not recognize the subjects to "be honest." A.L. testified that she was 90 percent sure that the "first one with the green jacket" was the person who robbed her. A.L. placed her positive identification level at 90 percent because she did not see the perpetrator's pants and shoes at the time of the robbery. A.L. identified the person who wore the green jacket as the one who robbed her of her vehicle at gunpoint. A.L. recalled that the identification of the person, later determined to be S.C., took place around 12:00 a.m. She verified that she never gave S.C. permission to operate her vehicle. She further indicated that the parking lot of the apartment complex where the robbery took place was poorly lit. A.L. said she could not see the hair of the male in the green sweater because his hoodie was pulled up. A.L. stated that she did not see his face, only his eyes, and that she did not observe any markings or tattoos.

4

For the identification, A.L. sat in the front passenger seat of the police car as it slowly drove past the two males. She testified that the two males wore masks and were not handcuffed. A.L. acknowledged that although the colors were the same, she did not identify the green sweater as camouflage or see that the sweater had lettering on the front until the show-up identification.

Ariana Sparacino ("Ms. Sparacino"), a police technical specialist who works in the crime lab, took photographs at the crime scene in the early morning hours of January 7, 2021, and processed the physical evidence for DNA. Ms. Sparacino identified photographs, which were admitted into evidence, including photographs of the red Nissan Altima, the gun located on the interior front driver's side, the subjects who were apprehended, and street signs that verified their locale. Ms. Sparacino stated the photographs depicted the license plate of the Nissan Altima, as well as identified the gun the State showed her in court as the same gun depicted in her photographs. She additionally confirmed that the serial number shown in court matched the serial number of the gun she photographed. Ms. Sparacino testified that her photographs of S.C. showed him wearing a camouflage sweater, jeans, and black shoes and that close-ups of his face revealed he had tattoos on his face and a nose ring.

### PROCEDURAL HISTORY

On January 11, 2021, the State filed a delinquency petition against S.C. and another juvenile[2] for armed robbery with a firearm relative to the taking of a

_____

[2] The juvenile court conducted separate adjudication proceedings for S.C. and the other juvenile identified as the other perpetrator in connection with the armed robbery.

Nissan Altima belonging to A.L. S.C. entered a general denial to the allegations raised in the petition. An adjudication hearing took place on May 26, 2021, at the conclusion of which the juvenile court adjudicated S.C. delinquent. On July 6, 2021, the juvenile court imposed a disposition of one year, granting S.C. credit for six months already served. S.C. timely filed the present appeal.

## ERRORS PATENT

"[A] juvenile delinquency adjudication warrants an errors patent review." *State in Interest of A.P.*, 20-0623, p. 6 (La. App. 4 Cir. 4/21/21), 317 So.3d 887, 890 (citing *State ex. rel. A.H.*, 10-1673, p. 9 (La. App. 4 Cir. 4/20/11), 65 So.3d 679, 685). A review of the record reveals no errors patent.

## STANDARD OF REVIEW

Louisiana Revised Statute 14:64(A) provides that "[a]rmed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." S.C. does not contest that the elements of the offense of armed robbery were met. Rather, S.C. avers that A.L.'s identification of him was insufficient evidence to prove his identity beyond a reasonable doubt. S.C. contends that the show-up identification procedure was unduly suggestive, and A.L.'s identification was unreliable.

The standard of review in a juvenile delinquency case was explained in *State in the Interest of S.J.*, 13-1025, p. 3-4 (La. App. 4 Cir. 11/6/13), 129 So.3d 676, 678-79, as follows:

In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The *Jackson* standard of review is applicable in juvenile delinquency cases. *State in the Interest of T.E.,* 00-1810, p. 4 (La. App. 4 Cir. 4/11/01), 787 So.2d 414, 417.

In addition, La. Const. art. V, § 10(B) mandates that an appellate court review both law and facts when reviewing juvenile adjudications. "While delinquency proceedings may in many ways implicate criminal proceedings, sometimes even mimicking them, they are nonetheless *civil* in nature." *State in the Interest of D.R.,* 10–0405, p. 5 (La. App. 4 Cir. 10/13/10), 50 So.3d 927, 930. (Emphasis supplied). Therefore, as in the review of civil cases, a factual finding made by a trial court in a juvenile adjudication may not be disturbed by an appellate court unless the record evidence as a whole does not furnish a basis for it, or it is clearly wrong. *State in Interest of K.G.,* 11–1559, p. 4 (La. App. 4 Cir. 3/21/12), 88 So.3d 1205, 1207, citing *State in the Interest of Batiste,* 367 So.2d 784 La.1979); *State in the Interest of S.S.,* 557 So.2d 407 (La. App. 4th Cir. 1990); *State ex rel. E.D.C.,* 39,892 (La. App. 2 Cir. 5/11/05), 903 So.2d 571. In sum, we apply the "clearly wrong-manifest error" standard of review to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt.

## *DISCUSSION*

*Show-up Identification Procedure*

S.C. avers the evidence was insufficient to adjudicate him delinquent based on an unduly suggestive show-up identification procedure. At the outset, we note that S.C. failed to properly preserve this issue for appellate review. S.C. filed an omnibus motion for discovery and motion to preserve evidence, which the juvenile court granted. However, the pleadings did not include a motion to suppress

7

identification; and moreover, the record shows that S.C. did not object to the show-up identification process at the adjudication hearing.

In *State ex rel. J.F.*, 03-0321 (La. App. 3 Cir. 8/6/03), 851 So.2d 1282, the juvenile J.F. failed to file a motion to suppress statement and failed to make a contemporaneous objection. The Third Circuit explained:

> The Louisiana Children's Code does not contain a provision regarding a juvenile's failure to make a contemporaneous objection. However, "[w]here procedures are not provided in [the Children's] Code, or otherwise by law, the court shall proceed in accordance with. . . [t]he Code of Criminal Procedure in a delinquency proceeding. . . ." La. Ch.Code art. 104(1). Applying La.Ch.Code art. 104(1), we find that La.Code Crim.P. art. 841(A) provides:
>
>> An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

*Id.*, 03-0321, p. 4, 851 So.2d at 1285.

Similarly, La. Ch.C. art. 872, which allows for the filing of a motion to suppress evidence, does not delineate the procedural steps in considering the motion at a delinquency proceeding. Therefore, we look to the Louisiana Code of Criminal Procedure for the proper procedure to consider S.C.'s motion to suppress. Louisiana Code of Criminal Procedure Article 703(F) provides, in part, that

"[f]ailure to file a motion to suppress evidence in accordance with this Article prevents the defendant from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress." Because S.C. failed to file a motion to suppress his identification or object to the legality of the show-up identification process at his delinquency hearing, the issue was not preserved for appellate review. Notwithstanding S.C.'s failure to preserve this issue, we find S.C.'s claim that the show-up identification was unduly suggestive so as to offend due process lacks substantive merit.

"An identification procedure is [unduly] suggestive, if during the procedure, the witness' attention is unduly focused on the defendant." *State v. Newsome*, 18-1075, p. 7 (La. App. 4 Cir. 2/27/19), 265 So.3d 1223, 1228 (citation omitted). Notwithstanding, even if the defendant demonstrates that the identification is suggestive, a defendant's right to due process is only violated if a showing is made of the substantial likelihood of misidentification. *State v. Dove*, 15-0783, p. 26 (La. App. 4 Cir. 5/4/16), 194 So.3d 92, 110. The defendant's burden of proof is two-fold: the defendant must show that the out-of-court identification was suggestive and that there was a substantial likelihood of misidentification. *See State v. Brown*, 16-0965, p. 26 (La. App. 4 Cir. 5/3/17), 219 So.3d 518, 535 (citations omitted). In order to determine whether a suggestive identification created a substantial likelihood of misidentification, a reviewing court must consider the five factors discussed in *Manson v. Brathwaite*, 432 U.S. 98, 114-15, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), to wit: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between

9

the crime and the confrontation. This Court has conducted fact-intensive reviews in determining whether show-up identifications are unduly suggestive so as to create a substantial likelihood of misidentification.

In *State v. Robinson*, 09-0922, p. 11-13 (La. App. 4 Cir. 3/10/10), 50 So.3d 158, 165-66, this Court concluded that a show-up identification was not so suggestive so as to cause a substantial likelihood of misidentification where a victim identified the defendant after the defendant was placed in the middle of a neutral ground, handcuffed and bleeding and surrounded by police. The *Robinson* Court reached this determination by applying the *Manson* factors to the totality of the circumstances, noting that the police arrived on the scene before the victim finished talking to the 911 operator; the victim identified the defendant within 20 to 25 minutes of the robbery; the victim was certain of his identification of the defendant because the defendant pointed a gun at him; the victim knew the defendant's eyes and face because the defendant had "looked dead at [him]" throughout the robbery; and the victim's description was consistent throughout the process. *Id.*

Similarly, in *State v. Briley*, 13-1421 (La. App. 4 Cir. 10/1/14), 151 So.3d 633, this Court found that an arguably suggestive show-up identification procedure did not result in a likelihood of misidentification. In *Briley*, an armed robbery victim was notified that the police had a subject in custody. At the show-up identification, the victim identified the defendant who was handcuffed and had a spotlight shone on his face. The *Briley* Court applied the *Manson* factors, reasoning that the defendant's show-up identification, although arguably suggestive, did not create a substantial likelihood of misidentification upon considering that the victim had ample lighting and an opportunity to view the

perpetrator at the time of the crime; the victim's attention was focused on the perpetrator; the victim accurately described defendant to the police; the victim was certain of his identification; and approximately 20 hours had lapsed between the crime and the identification. *Id.*, 13-1421, p. 17-20, 151 So.3d at 644-46.

On the other hand, in *State v. Jackson*, 20-0056, p. 7 (La. App. 4 Cir. 4/8/20), 294 So.3d 1090, 1094, this Court found the defendant's show-up identification procedure was not only suggestive, but also created a likelihood of misidentification. In *Jackson*, the police presented each defendant to the victim individually, after each had been taken from the back of a police vehicle, and each defendant had remained handcuffed with an officer standing beside him. Taken as a whole, *Jackson* concluded these procedures were suggestive in that they unduly focused the victim's attention on the defendant. *Id.*, 20-0056, p. 7, 294 So.3d at 1094. In applying the *Manson* factors to conclude that the suggestive identification procedure presented a substantial likelihood of irreparable misidentification, this Court noted that the victim did not provide the officers with a description of the perpetrators' faces; the victim's attention was divided between the perpetrators; there were inaccuracies regarding the victim's prior description of the defendant's clothing and his physical features; the victim expressed doubt about her ability to identify the defendant; and the victim was about 50 feet away from the defendant at the time of the show-up identification. *Id.*, 20-0056, p. 7-11, 294 So.3d at 1094-96.

Comparing the show-up identification procedures in *Robinson*, *Briley,* and *Jackson* to the case *sub judice*, we find S.C. cannot meet his initial burden of proving that the show-up identification procedure was suggestive. A show-up identification, without more, is not suggestive *per se*. *See State v. Norah*, 12-1194,

11

p. 14 (La. App. 4 Cir. 12/11/13), 131 So.3d 172, 184. Here, Detective Tousant, the supervising officer, testified that she took overt measures to ensure that the identification procedure was not unduly suggestive. Specifically, the victim did not see S.C. get out of a police unit, and although S.C. was initially handcuffed, Detective Tousant had the handcuffs removed during the identification. Moreover, A.L. testified that Detective Tousant encouraged her to be honest regarding her ability to recognize the persons presented to her during the show-up identification. Accordingly, we find that S.C. has not proven that the show-up identification procedure was suggestive.

Moreover, the application of the *Manson* factors also establishes that the procedure did not create a substantial likelihood of misidentification. A.L.'s testimony established that (1) she had time to view the robbers at the time of the offense; (2) A.L.'s attention was focused on the robbers as the gun was only a foot away from her face; (3) her description of the robber, later identified as S.C., as wearing a green sweater with a hood, wearing a mask, being dark-complexioned, and being taller than the other robber remained consistent; (4) A.L. was 90 percent certain of her identification;[3] and (5) the show-up identification was close in time after the crime—approximately one and a half to two and a half hours after the robbery[4] according to the respective testimonies of A.L. and Detective Tousant.[5]

---

[3] A.L.'s only uncertainty about her identification was the fact that she was unable to identify the robber's pants at the show-up identification as she did not observe the pants during the robbery; otherwise, she said the person she identified presented the same way as the person who held the gun on her.

[4] A.L. testified that she remembered identifying the suspect at 12:00 a.m. and Detective Tousant recalled the show-up identification took place at approximately 1:00 a.m.

[5] *State v. Brown*, 09-0884, p. 8 (La. App. 4 Cir. 3/31/10), 36 So.3d 974, 980, establishes that the temporal element "is generally satisfied when the identification occurs within an hour of the crime." However, our jurisprudence has found longer delays acceptable. In *Briley*, 13-1421, p.

Thus, having failed to prove that his show-up identification created a very substantial likelihood of misidentification, S.C.'s argument that his identification was unduly suggestive and should have been suppressed lacks merit.

*Reliability of A.L.'s Show-up Identification*

S.C. also contends that the evidence was insufficient to prove the element of identity beyond a reasonable doubt. Specifically, S.C. notes that A.L. identified him in a drive-by identification primarily by the color of his hoodie, and A.L. did not make an in-court identification. S.C. contests the reliability of A.L.'s identification because she never mentioned his prominent facial tattoos; she did not describe the "GAP" logo on his hoodie; she only described the perpetrator as wearing a green hoodie, as opposed to a camouflage hoodie; and she did not notice that blue tape was wrapped around the grip of the confiscated gun. S.C. represents that only A.L.'s unreliable identification linked him to the robbery; hence, the juvenile court erred in adjudicating him delinquent.

In *State in the Interest of K.D.*, 13-1274, p. 6 (La. App. 4 Cir. 4/9/14), 140 So.3d 182, 186 (quoting *State in the Interest of S.L.*, 11-883, p. 10 (La. App. 5 Cir. 4/24/12), 94 So.3d 822, 831), this Court summarized the law as it applies to the burden of proving identification as follows:

> In addition to proving the statutory elements of the charged offense, the State is required to prove the identity of the perpetrator. *State v. Searls,* 04-790 (La. App. 5 Cir. 1/25/05), 895 So.2d 40, 43. The State is required to negate any reasonable probability of misidentification in order to carry its burden of proof when the key issue is identification. *Id.* Positive

20, 151 So.3d at 646, the victim's identification of the robber more than 20 hours after the robbery was found not to have a "corrupting effect" on the identification. *See also State v. McKinney*, 455 So.2d 1235, 1238 (La. App. 4th Cir. 1984), where a three-hour delay from the time of crime and the out-of-court identification was deemed sufficient to uphold the identification.

> identification by one witness is sufficient to support a conviction. *State v. Benoit,* 07-35 (La. App. 5 Cir. 5/29/07), 960 So.2d 279, 282.

Analyzing whether the State has met its burden of proof, "[a] reviewing court grants great deference to the Juvenile Court's factual findings, credibility determinations, and assessment of witness testimony." *State in the Interest of K.D.,* 13-1274, p. 6, 140 So.3d at 186.

In this case, the juvenile court accredited the testimony of A.L. and found her identification reliable. S.C.'s complaints as to the reliability of A.L.'s identification go to a lack of specificity rather than inconsistencies in her description of the robber. S.C. does not point out any affirmative discrepancies between A.L.'s identification of him at the show-up identification and any prior descriptions given to police officers. S.C.'s "camouflage" hoodie sweater is still a green sweater as described by A.L., and A.L.'s failure to include S.C.'s facial tattoos as part of her description was explained by the fact that the robber had a mask on at the time of the crime and at the show-up identification. A.L.'s testimony was consistent as to what she did see—that one of the robbers had on a mask, was dark-complexioned, taller than the other suspect, and wore a dark army green hoodie. She also stated that she saw his eyes as well. A.L. admitted what she did not see, namely, she could not see her robber's face because he wore a mask; she did not notice the robber's pants, and she was unable to identify the second person at the show-up identification as one of the robbers.

Moreover, contrary to S.C.'s assertion, the juvenile court not only considered A.L.'s testimony, but also the testimony of Officer Mitchell, Detectives Tousant and Diesburg, and Ms. Sparacino, in identifying S.C. as one of the armed robbers and adjudicating him delinquent. The juvenile court expressly found that

14

"the descriptions of the juvenile in this incident were all consistent. . . ."

The juvenile court adjudicated S.C. delinquent based on the totality of the evidence and circumstances. Although the juvenile court acknowledged that the State presented no direct evidence to place the firearm in S.C.'s possession or to show that S.C. was inside A.L.'s vehicle, evidence may be direct or circumstantial. La. R.S. 15:438 provides that "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." Circumstantial evidence consists of "'proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.'" *State v. Hankton*, 12-0466, p. 6 (La. App. 4 Cir. 4/30/14), 140 So.3d 398, 404 (quoting *State v. McNair*, 12-0064, p. 12 (La. App. 4 Cir. 12/28/12), 107 So.3d 806, 813). This Court addressed a juvenile delinquency proceeding involving circumstantial evidence in *State in the Interest of C.R.*, 19-0917 (La. App. 4 Cir. 1/29/20), 290 So.3d 220. We explained:

> When a case involves circumstantial evidence, the court does not determine whether another possible hypothesis exists which could explain the events in an exculpatory fashion. Rather, the reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether the alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all of the evidence most favorable to the prosecution must be adopted. Thus, irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process.

*Id.*, 19-0917, p. 6-7, 290 So.3d at 224 (internal citations omitted).

15

The collective testimony of A.L., Officer Mitchell, Detectives Tousant and Diesburg, and Ms. Sparacino linked S.C. to the robbery, the stolen red Nissan Altima owned by A.L., and the handgun used in the robbery. A.L. and the police officers identified S.C. as the person wearing the camouflage green sweater, who was identified at the show-up identification and arrested for the armed robbery of A.L. Additionally, Officer Mitchell and Detective Diesburg identified S.C. in open court. Detective Diesburg also identified S.C. as the person he saw fleeing from the Nissan Altima. A.L. testified that a handgun was used in the robbery, and Detective Tousant and Ms. Sparacino confirmed that a handgun was recovered from the Nissan Altima and identified the handgun at the delinquency hearing. In contrast, S.C. put forth no reasonable hypothesis of innocence to counter any of the circumstantial evidence offered by the State; he merely proclaimed his innocence. Therefore, we find no merit to his argument that the evidence was insufficient to adjudicate him delinquent based on his claim that A.L.'s identification of him was unreliable.

### DECREE

Considering the record as a whole, we find a rational basis exists for the juvenile court's delinquency finding. We find the State provided sufficient evidence to satisfy the standard of proof beyond a reasonable doubt. For the reasons set forth above, we affirm S.C.'s delinquency adjudication and his disposition imposed for committing the offense of armed robbery with the use of a firearm, in violation of La. R.S. 14:64.3.

**AFFIRMED**

16